HARTMAN et al. v. SWIGER et al.

(District Court, N. D. West Virginia. July 8, 1914.)

1. CONTRIBUTION (§ 1*) — RIGHTS OF STOCKHOLDERS AS TO CORPORATION — FEES OF ATTORNEYS EMPLOYED BY STOCKHOLDER.

The relation between a stockholder or bondholder of a corporation and attorneys employed by him to look after his interests in the conduct or winding up of the affairs of the corporation is purely personal, and it is only under peculiar conditions that he can call on his fellow stockholders or bondholders to contribute to the payment of such attorneys.

[Ed. Note.—For other cases, see Contribution, Cent. Dig. § 1; Dec. Dig. § 1.*]

2. ATTORNEY AND CLIENT (§ 184*)—BANKRUPTCY (§ 191*)—ATTORNEYS' LIEN —PROTECTION AGAINST ASSIGNMENT BY CLIENT.

A stockholder in a corporation employed defendants as attorneys to represent him in protracted litigation relating to the affairs and winding up of such corporation and its predecessor of which he was also a stockholder. On the sale of the property of the second corporation, money distributable to the stockholders came into the hands of defendants, but prior to that time, without the knowledge of defendants their client had assigned his stock, in part to his mother and wife, and had been adjudged bankrupt. Held, that defendants had a lien on the money in their hands distributable to such stock for the reasonable value of their services, and those of associate counsel employed by them, which was good against the trustee in bankruptcy, and also under the law of West Virginia against the assignees of the stock.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. § 388; Dec. Dig. § 184;* Bankruptcy, Cent. Dig. §§ 286, 287, 290, 351; Dec. Dig. § 191.*]

3. BANKRUPTCY (§ 191*)—PREFERENCES—ATTORNEYS' LIEN.

The bankruptcy proceedings against the stockholder were instituted in another state after those for dissolution of the corporation, but the trustee took no steps in the jurisdiction where the corporation was located and the dissolution proceedings were pending to secure or claim the fund which might be distributable to the bankrupt thereon, but sold the stock as an asset of the estate. Held, that defendants, who were not notified of the bankruptcy proceedings, were under no duty to prove their claim therein, but were entitled to rely on their lien.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 286, 287, 290, 351; Dec. Dig. § 191.*]

In Equity. Suit by Mary Hartman, Anna C. Hartman, and D. C. Clark against Arlen G. Swiger and J. H. McCoy. On final hearing. Decree for complainants in part.

Plaintiffs have filed their bill herein, alleging themselves to be the owners of 350 shares of the capital stock of the Ohio Valley Brewing Company, standing on the books of the company in the name of Geo. W. Hartman, 100 shares of which were assigned by Geo. W. Hartman to plaintiff Mary Hartman as security for the payment of $600, with interest from July 11, 1910, 100 shares assigned by him to plaintiff Anna C. Hartman August 21, 1910, and the remaining 150 shares assigned by Gilbert F. Meyer, trustee in bankruptcy for George W. Hartman to plaintiff Clark. It is then charged that Geo. W. Hartman has been adjudged a bankrupt and that in 1912 defendant Arlen G. Swiger was appointed a special commissioner by the circuit court of Tyler county, this state, to make sale of the property of the Ohio Valley Brewing Company, and as such commissioner did sell the same and applied a part of the proceeds to the indebtedness of the company, leaving a balance of $15,000

to be distributed to its stockholders: that he has not accounted for the purchase proceeds of $21,000 received by him, but has appropriated large sums therefrom to his own use and to the use of his codefendant McCoy; that the directors of this company by resolutions adopted February 20, 1912, directed said special commissioner, Swiger, to pay over to its attorneys McCoy and Swiger any balance of the proceeds of its property after payment of taxes, liens, and charges, and, further, that McCoy and Swiger, attorneys, should pay out such balance to its stockholders pro rata upon their stock holdings. It is then charged that said McCoy and Swiger, attorneys and defendants herein, have paid to all stockholders other than plaintiffs a portion of such funds but while they have made demand from said commissioner and said attorneys and defendants for their pro rata share of such proceeds, accompanying their demand with full proof of their stock holdings, the said defendants, as special commissioners and attorneys, have refused to account for and pay over to them the pro rata shares of such proceeds, due them under direction of the company's board of directors, but on the contrary, have appropriated the same to their personal use. An accounting is demanded and a decree asked upon same for the pro rata sums due them upon their stock holdings.

To this bill the two defendants have filed joint original and amended answers, in which they admit diversity of citizenship, that the books of the Ohio Valley Brewing Company show 350 shares of its stock outstanding in the name of Geo. W. Hartman, never transferred to any one else, evidenced by stock certificates Nos. 11, 12, 13, and 14, but denying any knowledge of the assignments thereof to plaintiffs as set forth in the bill. They charge that Mary Hartman and Anna C. Hartman, plaintiffs, are, respectively, the mother and wife of Geo. W. Hartman, but which one is the mother and which the wife, they are unable to say. They admit the adjudication in bankruptcy of George W. Hartman; that on November 8, 1912, defendant Arien G. Swiger was appointed special commissioner to sell, and, as such, afterward did sell, this brewing company's property for $21,000, as charged, but say the balance of proceeds remaining for stockholders after payment of taxes, liens, and charges was not $15,000, but $10,060.16. They admit that Arien G. Swiger as such commissioner has refused to account to plaintiffs, but charge that they have given a full account to Geo. W. Hartman of the matter and the condition of the fund, and they deny that a dollar of such fund has been appropriated to his use or that of his codefendant McCoy. They admit the directions of the company's directors as set forth in their resolutions that they have paid in full all other stockholders their pro rata shares of the balance of proceeds, except to Geo. W. Hartman or plaintiffs, and that plaintiffs, by counsel, have made demand upon them for such payment. They allege that they gave such attorney a full exhibit of the condition of the funds in their hands, but refused to pay over to him the money demanded on behalf of plaintiffs by him, but informed him they would pay over to him the money due upon the Geo. W. Hartman stock assigned to plaintiffs, less the amount of their just, proper, and appropriate counsel fees, which Geo. W. Hartman owed them. They allege the sum of $4,047.19 to be in their hands out of which they retained and paid to themselves and to Thomas P. Jacobs, associate counsel with them, the sum of $1,500, of which sum each was paid $500, as of April 13, 1912, as a portion of the fees due them and said Jacobs for attending to numerous pieces of litigation conducted for Geo. W. Hartman, who had never paid them theretofore anything for such services. And then, in careful detail, they set forth that since 1908 they and said Jacobs had been employed by Geo. W. Hartman as attorneys to advise him touching his interests in much and varied litigation in the state court, this court, the Circuit Court of Appeals for this Fourth Circuit, and the Supreme Court of the United States, for which they are entitled to receive in all the sum of $2,000, of which they have paid themselves the $1,500 above set forth, leaving $500 still due them. This litigation involved the organization of the Sistersville Brewing Company by Hartman and Bollinger Bros., the settlement of its affairs and claims to its property, its sale and purchase by Hartman and others, the organization of the Ohio Valley Brewing Company in the nature of a successor to the Sis-

tersville one, the conduct of its affairs, and its ultimate sale under judicial proceedings. They allege that all these services were rendered by them under direct employment with Geo. W. Hartman, who never transferred his 350 shares of stock in the Ohio Brewing Company, and of the bankruptcy proceeding against whom, in the Western District of Pennsylvania, they had no notice of, either actual or constructive, until some time in May, 1913, when a notice of sale to be made by Gilbert F. Meyer, trustee in bankruptcy, of the estate of George W. Hartman, was mailed to the Sistersville Brewing Company, about May 19, 1913, the date of said trustees' sale, after Hartman had been adjudicated bankrupt and after the time when creditors could have presented and proved any claims they had against him. They charge that neither they nor Jacobs were made parties to said bankruptcy proceeding in any manner; that George W. Hartman, knowing that he owed them and Jacobs for the services set forth, did not schedule in such bankruptcy proceedings the indebtedness on his part to them therefor; that his assignments of stock to his mother and wife were fraudulently made to defeat creditors; that bidders at the trustees' sale were not informed of the fund of $4,047.19 arising from the sale of the company's property in the hands of defendants, but this fact was concealed and sale was made in consequence of this stock and of other property rights and interests of said Geo. W. Hartman for the small sum of $600. It is thereupon charged that said defendants and Jacobs have an attorney's lien upon this fund for their services, that the amount claimed, $2,000, is reasonable, and that the trustee in bankruptcy took such stock subject to such lien and the obligation of such lien upon the fund arising from the sale of the company's property, and that the purchaser under his sale did likewise.

To these answers the plaintiffs have filed a reply denying in effect the employment of defendants and Jacobs by Hartman, charging the services rendered by them to have been at the instance and costs of the respective brewing companies and the bondholders thereof, and denying the alleged value of the services. Motion to strike out portions of the answer was entered and reserved until this final hearing.

Charles T. Moore, of Pittsburgh, Pa., and Hubbard & Hubbard, of Wheeling, W. Va., for plaintiffs.

Thomas P. Jacobs, of New Martinsville, W. Va., and John P. Arbenz, of Wheeling, W. Va., for defendants.

DAYTON, District Judge (after stating the facts as above). [1] It is very apparent from pleadings and evidence in this cause that defendants are asserting in good faith a lien for legal services running over a number of years. At the threshold I may state that careful consideration of the facts, as disclosed by the evidence, convinces me that George W. Hartman employed these attorneys personally to protect his interests as a bondholder and stockholder of these two brewing companies, that they rendered such services and incurred such expenses in attending to his interests as to entirely warrant them in charging and receiving the sums claimed by them, and that the position taken by plaintiffs' counsel to the effect that the companies and the bondholders interested should alone be held liable for payment does not impress me as sound. Any stockholder or bondholder of a corporation may well employ attorneys to defend his interests in the conduct and winding up of its affairs, and it by no means follows that in such case, the attorneys must seek remuneration alone from the corporation assets. The relation is a purely personal one between the attorney and his client, the stockholder or bondholder, and it is only under peculiar conditions that such person, employing the attorney, can call for contribution in

payment of legal services from his fellow stock or bond holders. Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157; Central Railroad v. Pettus, 113 U. S. 116, 5 Sup. Ct. 387, 28 L. Ed. 915; Harrison v. Perea, 168 U. S. 311, 18 Sup. Ct. 129, 42 L. Ed. 478.

[2] The next question to be considered is whether these attorneys had a lien upon the funds involved herein. The law governing attorney's liens, classifying them into possessory and charging ones, is too well settled to warrant further discussion, and it must be admitted that:

"If the relationship of attorney and client exists, the possessory lien will cover in general property of any sort belonging to the client and held by the attorney." 4 Cyc. 1005.

It also extends to the fees of associated counsel employed by the attorney or, rather:

"If the attorney collects the judgment, he may deduct, not only his own fee, but he is protected in the payment of like reasonable fees to other attorneys or counsel employed in the suit." Jones on Liens, § 144.

In the leading case in this state of Renick v. Ludington, 16 W. Va. 378, it is said:

"(1) An attorney has a lien, on the judgment * * * obtained by him for his client, for services and disbursements in the case, whether the amount of his compensation is agreed upon or depends upon a quantum meruit.

"(2) This lien includes not only the amount necessary to pay for his services and disbursements in the case, in which the judgment or decree is rendered, but also the amount necessary to pay for his services and disbursements in any other case, so connected with it as to form the basis on which such judgment or decree is rendered, or essential to the realizing of such judgment or decree. * * *

"(4) * * * Notice of the existence of such lien to the assignee of such judgment or decree is not essential to the maintenance of such lien against such assignee without notice."

Under these well-settled principles it is beyond doubt that these attorneys would be entitled to the lien claimed by them as attorneys of record in this running and related litigation, involving Hartman's interest in these two companies, as against Hartman, if he had not assigned his stock, or part of it, to his mother and wife, or if he had not been adjudged bankrupt and his interest had not vested thereby in his trustee. Do these or either of these conditions affect or destroy the lien? We have already seen that assignment, pending the litigation, even where no notice is given the assignee of the lien, neither affects nor defeats it. Renick v. Ludington, supra. If this were not so as a general principle, it seems to me that where, as in this case, one assigns his interests to near relatives, such as mother and wife, and continues to call upon the attorneys originally employed by him to prosecute and protect such interests, to perform such additional services, the law would presume him as doing so with knowledge and consent of such related assignees, in short, as their agent.

So far as the assignment by law to the bankrupt trustee is concerned, it is too well-settled to admit of controversy that such trustee takes only such title as the bankrupt has, subject to all liens and equities existing upon or against the property. Zartman v. Bank, 216 U. S. 134, 30 Sup. Ct. 368, 54 L. Ed. 418.

[3] This brings us finally to the question of the effect of the bankruptcy proceeding upon this lien and the failure of the defendants to assert it therein. It is to be borne in mind that this bankruptcy proceeding was instituted in the District Court for the Western District of Pennsylvania, and not in this Northern District of West Virginia, where these companies were located, their property situated, and the fund arising from the sale of it must and did necessarily arise and have its existence, and, further, that no attempt whatever was made in this proceeding by the trustee therein to secure and reduce into possession this fund. He did not even intervene in the state court proceeding, instituted prior to the bankruptcy one, and seek to have it decreed to him. Prior to the amendment of June 25, 1910 (chapter 412, 36 Stat. 838 [U. S. Comp. St. Supp. 1491]) of the Bankruptcy Act, some conflict of cases existed as to the propriety or necessity for the institution of ancillary proceedings in bankruptcy in other districts to secure possession in the trustee appointed by the bankrupt court of original jurisdiction, of property or funds situate in such other districts. I have always believed that propriety and necessity therefor was very apparent when, for instance, bankrupt courts in other states undertook to decree direct, real, and personal property situate in this state of corporations claimed to have their "principal place of business" or office situate in some one of their large cities, and that the power to entertain such ancillary proceedings was inherent in bankrupt courts as courts of equity. But it is no longer an open question. This amendment of 1910 expressly authorizes courts of bankruptcy to exercise ancillary jurisdiction over persons or property within their respective territorial limits, in aid of the receiver or trustee appointed in any bankruptcy proceeding pending in any other court of bankruptcy. This amendment effectively disposes of any conflict which may have arisen in respect to the exercise of ancillary jurisdiction. Collier on Bankruptcy (10th Ed.) § 23b, par. 4i, pp. 498, 499. Hartman's bankruptcy proceeding was instituted after this amendment. It was the plain duty of his trustee, if he desired to claim this fund, to institute such ancillary proceeding for the purpose, and give all persons interested due and proper notice of his claim, and to have this claim of lien on the part of these attorneys adjudicated here under the laws of this state, as it was entitled to be. He did not do this, but chose to sell, in another state, Hartman's certificates of stock for what he could get, possibly for less than half what he would have secured had he instituted such ancillary proceeding, and let the purchaser get what he could as his assignee. This purchaser cannot have one particle better right than he had, and no court here, in my judgment, under the law of this state, would have authorized the surrender of this fund to him until this attorney's lien had been paid thereout.

It follows that the defendants are entitled to retain out of this fund the $2,000 for fees as claimed by them, and to surrender to plaintiffs only the balance, and decree may be entered to that effect.