**ELLIOTT et al. v. ORTON et al.**

No. 8542—Opinion Filed April 2, 1918.

(171 Pac. 1110.)

1. **Appeal and Error—Acquiescence in Judgment—Right to Appeal.**

A party who voluntarily acquiesces in or ratifies, either partially or in toto, a judgment against him, cannot appeal from it.

2. **Same—Recognition of Judgment—Waiver of Right of Appeal.**

Any act on the part of the appellants by which they impliedly recognize the validity of the judgment below against them operates as a waiver of the appeal therefrom or to bring error to reverse it, and, where some of the appellants accept and appropriate residue of money received from the sale after the satisfaction of appellees' claim which had been appealed from, and thereupon motion to dismiss such appellants' appeal on account of such action being timely filed, should as to such appellants be sustained and their appeal dismissed.

3. **Attorney and Client—Attorney's Lien—Statute.**

Under section 247, Rev. Laws 1910, an attorney has a lien upon his client's affirmative cause of action only, and his statutory lien cannot be extended to services which merely protect an existing right or title of his client's property. He cannot impress such property with such statutory lien.

(Syllabus by West, C.)

Error from District Court, Pawnee County; Conn Linn, Judge.

Suit to enforce an attorney's lien by L. V. Orton and another against Maria Elliott, the First National Bank of Ralston, Okla., and another. Judgment for plaintiffs, and defendants bring error. Judgment as to the bank reversed, and court below ordered to modify its decree.

Redmond S. Cole, for plaintiffs in error.

L. V. Orton, for defendants in error.

Opinion by WEST, C. This suit was instituted in the district court of Pawnee county, Okla., on the 21st day of April, 1915, by defendants in error, plaintiffs below, against plaintiffs in error, defendants below, to impress and enforce an attorney's lien on certain lots situated in the town of Ralston in said county and state. Parties will be referred to hereinafter, as they appeared in the court below.

It appears that: Some time in 1911 Mary Elliott and J. W. Elliott were sued by one Stroud to dispossess and quiet title to the lots in controversy, and that plaintiffs were employed to defend said suit. That, at the time of the institution of this suit and before the employment of plaintiffs, Elliotts had executed a mortgage to John A. Stuart on said property for the sum of $150. During the progress of the suit, plaintiffs indorsed, "Attorney's lien claimed," upon the answer filed to the Stroud suit. That in 1914 the Elliotts executed a mortgage to the First National Bank of Ralston for $325. This included the Stuart mortgage for $150 which had been assigned by Stuart to the

Bank of Ralston, which was succeeded by the First National Bank, and some other sums which were due by Elliotts to the bank. After the disposition of the Stroud suit, which was decided in favor of the Elliotts, plaintiffs undertook to impress an attorney's lien upon the lots by this suit, claiming that they had a statutory lien, and in addition that the Elliotts had promised to execute them a mortgage upon the lots to secure their attorney's fee. Elliotts filed answer to the suit setting up the fact that the lots were a homestead, that the lots sought to be impressed were not the lots in controversy in the Stroud suit, and that they had executed a mortgage upon said lots to the First National Bank which was a superior and prior lien to any lien which the plaintiffs might have, and further that under the attorney's lien law the plaintiffs could not maintain their suit for the reason that the statutory lien sought to be enforced could only attach to the cause of action and not to the subject-matter of the action. The First National Bank filed a separate answer which was practically the same as the answer filed by the Elliotts; cause was tried to the court on the 5th day of January, 1916; and a judgment rendered in favor of plaintiffs, giving them the lien upon the property sought to be impressed therewith, subject to the $150 represented by the Stuart mortgage. From this action of the court defendants perfected their appeal, and plaintiffs below, defendants in error, have filed motion to dismiss said appeal for the reason that said cause has become a moot question on account of the acts and conduct of the defendants since their appeal herein.

The ground of said motion is in effect that, after the appeal was taken, no supersedeas bond having been filed, plaintiffs had order of sale issued and property sold to satisfy the judgment, and that the same was bought in by John A. Stuart, the president of the First National Bank, for the sum of $190, subject to the $150 which was represented by the original mortgage given him and included in the $325 mortgage claimed by the bank; and that, after the satisfaction of the judgment of plaintiffs, there remained something over $52 which the Elliotts accepted, thereby ratifying said judgment and sale. We are of the opinion that said motion is well taken.

In the second paragraph of the syllabus in the case of Barnes et al. v. Lynch et al., 9 Okla. 11, 59 Pac. 995, the following rule is announced:

"A party who voluntarily acquiesces in or ratifies, either partially or in toto, a judgment against him, cannot appeal from it. Where plaintiffs brought action, claiming to be the owners of certain lands praying a decree for absolute title, and for the quieting of the same, and the decree was for the defendant, decreeing that the defendant was the owner of the lands, from which decree plaintiffs appealed, and, pending appeal, on supplemental petition in the trial court plaintiffs claim to have expended individual moneys in the purchase of the lands under circumstances that would entitle them to an equitable lien for the amount expended, and had a referee appointed to make an accounting of the moneys so expended, and asking that the amount so found should be decreed an equitable lien upon the land, held, that such subsequent proceeding, being inconsistent with the assertion of absolute ownership and title, was an acquiescence in and the ratification of the judgment, and that their appeal should be dismissed."

In the body of the opinion the court announced and adopted the following rule:

"No rule is better settled than that the right to appeal may be waived by the acts of the party which are inconsistent with the assertion of that right. A party who voluntarily acquiesces in or ratifies, either partially or in toto, a judgment against him, cannot appeal from it."

In case of City of Lawton v. Ayers, 40 Okla. 524, 139 Pac. 963, first paragraph of the syllabus is as follows:

"Any act on the part of a defendant by which he impliedly recognizes the validity of judgment against him operates as a waiver to appeal therefrom or to bring error to reverse it."

In the body of the opinion the court uses the following language:

"A preliminary question decisive of the cause is presented by counsel for defendant in error by a motion to dismiss the appeal. It seems that, subsequent to the rendition of the judgment against it, the city of Lawton commenced a proceeding for the purpose of funding its warrant and judgment indebtedness, wherein it included the judgment herein as one of the items of valid indebtedness against it; that said funding proceeding culminated in a bond issue which was approved by the Attorney General, as required by law, in which said judgment was included as one of the items funded. The contention of the movant is that this proceeding constitutes a recognition on the part of the city of the validity of the judgment rendered against it, and a waiver of its right to appeal therefrom or to bring error to reverse it. We think this position is well taken. The rule is 'that any act on the part of the defendant by which he impliedly recognizes the validity of a judgment against him operates as a waiver to appeal

therefrom, or to bring error to reverse it.' 2 Cyc. 656."

Applying the rule announced in the foregoing cases, it is apparent that, when the Elliotts by their attorney accepted the $52, the excess that the property brought after satisfying the judgment of plaintiff, they thereby acquiesced in said judgment and ratified the same in part and in effect ratified the judgment entered by the district court in foreclosing the liens of plaintiff. We are therefore of the opinion that the Elliotts became estopped to deny the validity of said judgment and are bound thereby, and that their appeal should be dismissed, and it is so ordered.

However, we are of the opinion that the other plaintiff in error, the First National Bank, is not in the same attitude as the Elliotts, for the reason that the foreclosure of said lien was made subject to the $150 contained, and which the court found was superior and paramount to the liens of the plaintiff, and will therefore be necessary to determine whether or not their mortgage is superior to the lien claimed by plaintiffs, and this necessarily calls for construction of section 247, Rev. Laws 1910, which is as follows:

"Lien Shall Attach When—To What Extent.—From the commencement of an action, or from the filing of an answer containing a counterclaim, the attorney who represents the party in whose behalf such pleading is filed shall, to the extent hereinafter specified, have a lien upon his client's cause of action or counterclaim, and same shall attach, to any verdict, report, decision, finding or judgment in his client's favor, and the proceeds thereof, wherever found, shall be subject to such lien, and no settlement between the parties without the approval of the attorney shall affect or destroy such lien, provided such attorney serves notice upon the defendant or defendants, or proposed defendant or defendants, in which he shall set forth the nature of the lien he claims and the extent thereof; and said lien shall take effect from and after the service of such notice, but such notice shall not be necessary provided such attorney has filed such pleading in a court of record, and indorsed thereon his name, together with the words, 'Lien claimed.'"

There is some contention as to whether or not the lots sought to be impressed by the attorney's lien claimed by plaintiff's are the identical lots which were in controversy in the Stroud suit. While it is true that the numbers are not the same, we are of the opinion that the evidence discloses it was the identical property which was owned and claimed by the Elliotts in the town of Ralston, and which was in controversy in the Stroud suit, and are the lots upon which plaintiffs attempt to impress their lien and foreclose the same; and this statute, supra, seems to have never been construed by the Supreme Court of this state, that is, with reference to just how far the lien reaches and to what it attaches. Before the enactment of this statute, there does not seem to have been any attorney's lien law in force in the state of Oklahoma, and in the absence of some statutory provision an attorney has only a retaining lien and has no charging lien on the naked cause of action or the res of the action.

Section 364 and 386, Corpus Juris, reported in volume 6, pages 766 and 778, respectively, treat this subject as follows:

"364. 3. Charging Lien—a. In General. The special or charging lien of an attorney is an equitable right to have the fees and costs due to him for services in a suit secured to him out of the judgment or recovery in that particular suit, the attorney, to the extent of such services, being regarded as an equitable assignee of the judgment. It is based on the natural equity that the plaintiff should not be allowed to appropriate the whole of a judgment in his favor without paying thereout for the services of his attorney in obtaining such judgment. It is an exception to the general rule in that it lacks the element of possession which is essential to ordinary liens, and for this reason such lien, strictly speaking, did not exist at common law. In fact the use of the term 'lien' in this connection has been criticized as inaccurate, and the right of the attorney has been said to be merely a claim to the equitable interference of the court. The existence of the lien was, however, recognized in several early English cases, and it now exists in most jurisdictions either by statute or by virtue of judicial decision. In some jurisdictions, however, the charging lien is not recognized."

"386. b. Cause of Action, Counterclaim, etc. —(1) In General. In the absence of some statutory provision, an attorney has no lien upon the naked cause of action of his client. By statute, however, in some jurisdictions, an attorney has a lien upon his client's cause of action, claim, or counterclaim, which attaches to a verdict, report, decision, judgment, or final order in his client's favor, and the proceeds thereof. The existence of any such lien depends upon the attorney's authority to begin the suit. The effect of such a provision as to an attorney for a plaintiff, is: (1) That he has a lien from the commencement of an action or special proceeding upon his client's cause of action or claim; and (2) that such lien attaches to the verdict, report, decision, judgment, or final order in his client's favor. As to an attorney for a defendant, the effect of such a provision is: (1) That he

has a lien from the time of the service of an answer containing a counterclaim upon his client's counterclaim; (2) that such lien attaches to the verdict, report, decision, judgment, or final order in his client's favor. To give rise to a lien the counterclaim must result in an affirmative judgment for defendant, where no affirmative relief is claimed no lien exists, except as to a judgment for costs. Such a statute does not purport to give a general lien upon all moneys belonging to the client. Being conferred upon the cause of action, it is not lost by a settlement of such cause of action. It attaches to the proceeds of such action, although the action never reaches a verdict, report, decision, or judgment. But where there is no cause of action, claim, or counterclaim involved the lien does not attach."

Arkansas has a statute somewhat similar to that of Oklahoma, and in the case of Hershy v. Duval, 47 Ark. 86, 14 S. W. 469, the court lays down the rule, and holds that the lien is limited to cases where there has been an actual recovery and cannot extend to professional services which merely protect an existing title or right of property. It seems by the Oklahoma statute that the attorney only has lien upon his client's cause of action or counterclaim which attaches to any verdict, report, decision, findings, or judgment in his client's favor, and the proceeds thereof wherever found. It seems to indicate that in order for the lien to become effective that there must be affirmative relief in favor of his client, and that any services which he may render that merely protect his client in the possession and right to his property are not covered by the attorney's lien law. In other words, that the attorney has no lien upon the res of the action, but only upon any affirmative judgment rendered in his client's favor. This being true, we are of the opinion that, inasmuch as the lien of plaintiffs could not and did not attach to the rest of this action, it could not have been enforced as against the Elliotts, except for the fact that they had accepted benefits under the judgment declaring and fixing the lien, and acquiesced therein, and therefore could not as between the plaintiffs and the bank affect the validity of the bank's mortgage, and would not therefore be paramount and superior to the same; but it would be, under the status of this case, a valid and subsisting lien against Elliotts, subject to the interest of the bank as evidenced by their mortgage.

It is therefore ordered that said judgment as to the plaintiff in error the bank be reversed, and that the court below modify said decree awarding plaintiff's lien on the property in controversy subject to the mortgage of the bank, and it is so ordered.

By the Court: It is so ordered.