Note.—See under (1) 27 Cyc. p. 724. (2) 27 Cyc. pp. 730, 734, 740; anno. 34 L. R. A. (N. S.), 35; L. R. A. 1915B, 563, 18 R. C. L. 1212; 3 R. C. L. Supp. 904; 4 R. C. L. Supp. 1242, 5 R. C. L. Supp. 1019. (3) 27 Cyc. p. 735. (4) 27 Cyc. p. 738.

---

**LASHLEY v. MOORE et al.**

No. 12800—Opinion Filed May 19, 1925.

Rehearing Denied Oct. 27, 1925.

**1. Attorney and Client—Contingent Fee for Recovery of Land—Equitable Assignment of Interest.**

An attorney agreed to conduct litigation for quieting title to his client's real estate, and the client agreed as compensation "to make, execute, and deliver to said second party (attorney) a good and sufficient warranty deed conveying an undivided one-half interest in and to said lands above described." Held, that the agreement constituted an equitable, conditional assignment to the attorney of an interest in the subject of litigation.

**2. Same—Contingent Fee Contract—Legality.**

Such contract was not illegal or against public policy.

**3. Same—Right to Contract not Limited by Lien Statutes.**

Sections 247, 248, and 249, Rev. Laws 1910, providing for attorney's lien, and other matters, were cumulative and did not abrogate or limit the rights of attorney and client to make contracts between themselves subject to the confidential relation except as to the quantum of percentage fee.

**4. Appeal and Error—Disposition of Cause.**

Held, the court erred in sustaining the demurrers to the petition.

(Syllabus by Estes, C.)

Commissioners' Opinion, Division No. 2.

Error from District Court, Creek County; Mark L. Bozarth, Judge.

Action by Edward Lashley against Lake Moore and Carter Oil Company. Judgment for defendants, and plaintiff appeals. Reversed.

Lashley & Rambo, for plaintiff in error.

Jas. A. Veasey, C. M. Oakes, and Walter Davison, for Carter Oil Company.

Walker & Lee, for defendant in error Moore and Kaiser.

Opinion by ESTES, C. Parties appear in the same order as in the trial court. From an order sustaining demurrers of defendants to amended petition of plaintiff, plaintiff brings error. The sole question is, Does the amended petition state a cause of action? Plaintiff alleged that in 1916, Thomas Haynes, Jr., was the owner of the legal and equitable title to certain 160 acres; that he was a full-blood Creek Indian and had inherited the land from a full-blood Indian; that in 1916, the title of said Haynes to such land was clouded by a purported warranty deed from himself to defendant Lake Moore, and duly recorded, and by an oil and gas lease from Moore to one Simmons, and by other leases; that thereupon Haynes employed plaintiff Lashley as his attorney by written contract reciting that Haynes claimed to be the owner in fee of the land, describing same; that the title was clouded by various deeds and leases of record; that Haynes desired to remove the clouds and have his interest in the land determined; that for such purpose he employed plaintiff Edmond Lashley and—

"Agrees to give to said Edmond Lashley, party of the second part, an undivided one-half interest in and to all sums of money which may be recovered therein at the end of the litigation or upon compromise, and in case the land is recovered, first party covenants and agrees to make, execute and deliver to said second party, a good and sufficient warranty deed conveying an undivided one-half interest in and to said lands above described"

—that Lashley should duly prosecute the cause and accept as full compensation for his services—

"One-half of any and all sums of money recovered upon compromise or by judgment and in case the said land is recovered, a deed to an undivided one-half interest in and to the interest of the party of the first part"

—that if the litigation terminated adversely to Haynes, no fees were to be charged, and that Haynes should pay all costs of the litigation. Plaintiff further alleged that the contract of employment was duly acknowledged and filed for record in the county of the situs of the land: that said contract was approved by the county court of the proper county where the allottee of the land resided at the time of his death; that pursuant to such contract of employment, plaintiff Lashley, for said Haynes, instituted such suit accordingly, exhibiting the petition in such former action. Cancellation of the deeds from Haynes to Lake Moore and of certain oil and gas leases was sought on the grounds of fraud and because the Moore deed and leases had not been approved by the county court having jurisdiction of the estate of the deceased allottee as provided by Act of Congress May 27, 1908. Plaintiff Lashley also alleged that at the time he filed said petition to quiet title for said Haynes against Moore and others, the legal question, whether it was necessary to the validity of the Moore deed that it be approved by the county court having jurisdiction of the estate of the deceased allottee, had not been determined; that thereafter. in 1918, and while said cause was pending, it was decided by the Supreme Court of the United States that such approval was necessary to give such deeds validity; that when defendant herein, Lake Moore, learned of such decision, knowing that plaintiff in that case would prevail, he conceived and carried out a scheme of fraud, menace, and duress upon said Haynes—the fraud being alleged at length—whereby he procured another purported warranty deed for said real estate from said Haynes to himself for the trivial sum of $200, whereas said land was in fact worth $10,000; and thereby procured also from Haynes an affidavit by the contents of which it was sought to justify the transaction whereby the latter deed was procured, and also procured from him a dismissal of said action to quiet title which had been filed by plaintiff for Haynes; that thereafter said Lake Moore procured a purported approval of his said second deed from Haynes by a county court that did not have jurisdiction of the estate of the deceased

allottee and ancestor of Haynes, alleging such purported approval to have been void: that when plaintiff Lashley learned of these things, he offered to Haynes to proceed with said action to quiet title and to include therein a cause for the cancellation of the second deed procured by Moore and other instruments, but that said Haynes would not so consent or do; that thereafter said Moore executed an oil and gas lease on said real estate to defendant herein, Carter Oil Company; that at the time of the execution of such oil and gas lease, the Carter Oil Company had both actual and constructive notice of the claims and rights of the plaintiff under his contract of employment with said Haynes and of all of the alleged fraud of the said Lake Moore in obtaining both his first and second deeds from said Haynes; that plaintiff was at all times able and willing to carry out his contract with his former client, Haynes, but was prevented therefrom by the matters aforesaid; that defendant Kaiser claimed some interest in the land, under Moore, but same was junior and subject to plaintiff's claim. Plaintiff Lashley further alleged that by virtue of his said contract with said Haynes and his performance to the extent thereof permitted, he acquired a vested right in equity to an undivided one-half interest in and to the land, subject only to the completion by plaintiff of his contract; that by reason of the fraudulent and grossly inequitable conduct of defendant Lake Moore, of which defendant Carter Oil Company had notice, preventing the completion of the performance of his said contract, defendants were precluded from asserting any nonperformance by plaintiff of his said contract with Haynes. His prayer was that defendants Moore and Carter Oil Company be adjudged trustees of plaintiff of an undivided one-half interest in the land, and that title to same be adjudged to plaintiff against defendants; that defendants be required to convey to plaintiff accordingly, and in default, that the decree operate as a conveyance, and for accounting of rents and profits accordingly. Since the questions presented involve only the contract of plaintiff, we have not set forth all the allegations of fraud.

It is familiar law that if said amended petition, when construed with the exhibits thereto liberally in favor of plaintiff, states facts showing that the plaintiff is entitled to any relief against defendants, the demurrers should have been overruled. It becomes of first importance to determine the exact nature of the contract of employment be-

tween plaintiff Lashley and Haynes. Taken by its four corners, it is that Haynes was the owner of the legal title of the land; that his title was clouded by various deeds and leases; that for the purpose of removing such clouds and determining his interest, he employed plaintiff Lashley; that for his services accordingly, Haynes "agrees to give to the said Edward Lashley, party of the second part, an undivided one-half interest in and to all sums of money which may be recovered at the end of the litigation or upon compromise, and in case the land is recovered, first party covenants and agrees to make, execute and deliver to said second party a good and sufficient warranty deed conveying an undivided one-half interest in and to the above lands described"; that plaintiff mutually agreed so to do and for such services "will accept and receive as full compensation * * * one-half of any and all sums of money recovered upon compromise or by judgment, and in case the land is recovered, a deed to an undivided one-half interest," etc.

It is unnecessary to consider that part of the consideration of plaintiff's contract for payment of an undivided one-half interest of money which might be recovered at the end of litigation or upon compromise, because it is not alleged that these contingencies arose. At the time of this contract, it was not certainly known that the deed and leases were void under the Act of Congress of May 27, 1908. It is alleged they were so void and void also for fraud. The parties, perhaps, thought that if the deed was not so void, they might deem it best to compromise for a money consideration, title passing to defendants by agreed judgment or otherwise, rather than to hazard the event of the action on the ground of fraud. In such event, plaintiff was to have one-half of the proceeds of the compromise, which would be the end of the litigation.

1. The other alternative, "and in case the land is recovered, first party covenants and agrees to make, execute and deliver to said second party a good and sufficient warranty deed, conveying an undivided one-half interest in and to said lands above described," is an agreement to convey an interest in the subject-matter of the litigation, or the res, subject to the condition subsequent that plaintiff perform the services successfully. When the contract is construed also in the light of the circumstances pleaded, it was an agreement by Haynes to so convey to plaintiff such interest in the land, owned in presenti by Haynes, subject to such con-

dition subsequent. It was an agreement to give plaintiff one-half of the land itself for quieting title thereto, not to give plaintiff a sum equal to one-half of the land, acknowledging an indebtedness and fixing the measure for the fees, nor to give plaintiff one-half of the proceeds of the cause of action. In Lansford v. Gloyd, 89 Okla. 232, 215 Pac. 198, this court requotes the following:

"In Warvelle on Vendors (2nd Ed.) Sec. 176, the doctrine of Chappell v. McKnight, supra, is reannounced and approved. It is there said: 'The essential feature of an equitable title is that it is one which appeals to equity for confirmation and enforcement. Hence a mere contract or covenant to convey at a future time on the purchaser performing certain acts does not create an equitable title. It is only when the purchaser performs or tenders performance of all the acts necessary to entitle him to a deed, that he has an equitable title and may compel a conveyance.'"

According to the allegations, plaintiff performed and tendered performance of all acts necessary to entitle him to a deed from Haynes and was prevented therefrom by defendants. In equity, the contract thus operated as a conveyance to the plaintiff of such undivided one-half interest in the land, contingent upon the performance by plaintiff of his obligations under the contract. It is well settled and conceded here that the alienation of his land or any interest therein by Haynes, under the allegations of the petition, was possible only under the acts of Congress and controlled exclusively by them. The Act of May 27, 1908, in force at all times referred to in this action, constituted the county court having jurisdiction of the estate of Haynes' ancestor, the federal agency, whose approval was necessary in order to give validity to any deed or conveyance of such inherited interest in land of Haynes. Under the petition, the first deed to Moore, and the various leases executed by Haynes, were absolutely void for want of such approval. On the other hand, the contract of employment between plaintiff and Haynes was acknowledged as a conveyance by both Haynes and plaintiff, was duly approved by the proper county court as such federal agency, and recorded in the county of the situs of the land. We think same was an alienation or conveyance within the purview of said act of Congress.

Syllabus paragraph 1 of Holmes v. Evants, 129 N. Y. 140, 29 N. E. 233, is:

"An attorney agreed with his client to conduct certain litigation, and the client a-

greed that the attorney should receive as his compensation a specified percentage of the amount recovered, reserving the right within 60 days to substitute a cash fee in place of such percentage. Held, that the agreement constituted an equitable, conditional assignment to the attorney of an interest in the subject of litigation."

In the opinion, it is said:

"An equitable assignment has been defined as be such an assignment as gives the assignee a title which, although not cognizable at law, equity will recognize and protect. Such an assignment passes an immediate equitable interest in the subject, although it is not essential to the creation of the interest that it should be immediately enforceable by suit for specific performance to recover the interest assigned. Whether, in a given case, the transaction amounts to an equitable assignment, depends to a great extent upon the intention. Whether the transaction is evidenced by a written agreement, it depends upon the intention of the parties as manifested in the writing, construed in the light of such extrinsic circumstances as under the general rules of law are admissible in aid of the interpretation of written instruments. It has been said that, 'to make an equitable assignment, there must be such an appropriation of the subject-matter as to confer a complete and present right upon the party intended to be provided for, even where the circumstances do not admit of its immediate exercise.' Swayne, J., Christmas v. Russell, 14 Wall. 69. There must undoubtedly be a purpose to pass a present interest, but that interest may be absolute or qualified—a right to the immediate possession and enjoyment, or a right to such enjoyment postponed until the occurrence of some future event. In other words, the assignment may be made subject to limitations, conditions, and qualifications, such as might be inserted in the conveyance or assignment of the legal estate in the same subject. The quality of the legal estate is that, and that only, which the parties intended."

In Fairbanks, Jr., v. Sargent, Exr., 104 N. Y. 108, 9 N. E. 870, Am. St. Rep. 490, involving analogous facts, it is said:

"Assuming, therefore, that Sargent could acquire from Underwood only such right as remained in him after his agreement with plaintiff, it becomes material to inquire what rights, legal or equitable, were acquired by Fairbanks from Underwood prior to the assignment to Sargent. It is to be observed that this claim does not rest for its support upon the lien claimed by the plaintiff by virtue of his rights as an attorney rendering legal services for a client, but grows wholly out of the interest transferred to him by force of his agreement. It is also important to notice that this contract does not contain a provision by Underwood to pay plain-

tiff from the funds produced, or otherwise, but is an engagement that plaintiff shall have one-third of the proceeds of the collection in specie, or in such form as they shall be received from the debtor. In the opinion of the learned judge, writing at general term, and which was concurred in by the whole court, it was held that he did acquire an equitable lien upon one-third of the proceeds of the collection, and we entirely concur in the opinion there expressed."

See, also, Alice Strong, 57 Fed. 249; Canty v. Latternar (Minn.) 17 N. W. 385; Milmo Nat. Bank v. Convery, 8 Tex. Civ. App. 181, 27 S. W. 828; Bell v. Board of Com. of Lake Co. (Colo.) 141 Pac. 861, citing Terney v. Wilson, 45 N. J. L. 282, 284; Davis & Goggin v. State Nat. Bank of El Paso (Tex. Civ. App.) 156 S. W. 321, holding:

"The sure criterion is whether the order or direction to the drawee, if assented to by him, would create an absolute personal indebtedness payable by him at all events, or whether it creates an obligation only to make payment out of the particular designated fund." Schubert v. Herzberg, 65 Mo. App. 578; Patten v. Wilson, 34 Pa. St. 299; Griggs v. C., R. I. & P. R. Co. (Neb.) 177 N. W. 185.

2. Attorneys may contract with their clients on such terms as to the parties seem just, subject to the limitations of the confidential relation. Such contracts providing for a contingent fee, by the weight of authority and in the absence of statutory authority, are valid. 2 R. C. L. 1039; 6 C. J. 740.

"A contract between a client and attorneys to the effect that they would carry on the litigation mentioned and receive as their compensation one-half of the properties and moneys that might be saved by their efforts, the client to pay the costs, was not illegal or against public policy." Sedbrook v. McCue (Kan.) 180 Pac. 787.

3. Inasmuch as Revised Laws 1910 were in force at the time of these transactions, it is insisted that plaintiff's contract of employment is governed by sections 247, 248, and 249 thereof, now amended. Section 247, in short, provides that an attorney may have a lien upon a client's cause of action or counterclaim and same would attach to any verdict, report, decision, finding or judgment, and the proceeds thereof; provides that no settlement between the parties without the approval of the attorney shall affect the lien when the attorney complies with the statute as to notice. In Elliott v. Orton, 69 Okla. 233, 171 Pac. 1110, it is said:

"It seems by the Oklahoma statute that the attorney only has a lien upon his client's

cause of action or counterclaim which attaches to any verdict, report, decision, findings, or judgment in his client's favor, and the proceeds thereof wherever found. It seems to indicate that in order for the lien to become effective, that there must be affirmative relief in favor of his client, and that any services which he may render that merely protect his client in the possession and right to his property are not covered by the attorney's lien law. In other words, that the attorney has no lien upon the res of the action—but only upon any affirmative judgment rendered in his client's favor."

By the contract under consideration, no affirmative judgment was sought and no lien could have been given plaintiff by said contract. We presume that the parties did not so intend. Section 248 simply limited the contingent fee of the attorney to 50 per centum of the net amount of the judgment or the compromise, and provided that no compromise by the client, without consent of the attorney, could abrogate the lien provided for in section 247. Section 249 had to do with an action wherein was involved a lien provided by the other sections and recognized the right of a party to settle his litigation, but provided for protection of the attorney when such settlement was made by the adversary without satisfaction of the attorney's claim, and when such adverse party would be liable for the contract amount of attorney fee and when for reasonable compensation of the attorney. These statutes are all cumulative. They were designed to protect attorneys in manner as other employes by affording security to the attorney by lien. These statutes do not undertake to abrogate or limit the general right of attorney and client to make contracts governing any transaction between them, except section 248, supra, fixed the maximum quantum of contingent fee. Haynes could make a valid agreement with plaintiff to convey to the latter one-half interest in his land for the services of plaintiff in successfully quieting title thereto, notwithstanding said statutes. In Ingersoll v. Coram, 211 U. S. 335, 29 Sup. Ct. Rep. 92, at p. 100, opinion by Mr. Justice McKenna, it is said:

"In Walker v. Brown, 165 U. S. 654, 41 L. Ed. 865, 17 Sup. Ct. Rep. 453, it is held that every express executory agreement in writing, whereby the contracting party sufficiently indicates an intention to make some particular property, real or personal, or fund, therein described or identified, a security for a debt or other obligation, creates an equitable lien on the property so indicated. This was an application of the doctrine of Fourth Street Nat. Bank v. Yardley, 165 U. S. 634, 41 L. Ed. 855, 17 Sup. Ct. Rep. 439,

and Ketchum v. St. Louis, 101 U. S. 306, 25 L. Ed. 999.' "

In that case, Robert G. Ingersoll had performed legal services under a contingent fee contract. Irrespective of the statutes of Montana, where the services were performed, providing for attorney's lien in certain cases, as shown by the sixth paragraph of the syllabus, the attorney acquired an equitable lien on the funds for his fee. In equity, the lien arises ex vi termini, where the intention of the parties is thus deducible. Under the foregoing, it is unnecessary to consider the contention of defendants that plaintiff was not entitled in any event to more than a reasonable fee under said section 249. Nor are the decisions of this court construing such lien statutes applicable here.

4. Since the petition alleges that defendants had both actual and constructive notice of the rights of plaintiff under his contract, they took the real estate subject to plaintiff's paramount rights therein. It follows that the petition states a cause of action. Let the case be reversed and the cause remanded, with directions to overrule the demurrers.

By the Court: It is so ordered.

Note.—See under (1) 6 C. J. p. 743. (2) 6 C. J. p. 740; 2 R. C. L. 1039; 1 R. C. L. Supp. 685; 4 R. C. L. Supp. 135; 5 R. C. L. Supp. 122. (3) 6 C. J. p. 740 (1926 Anno). (4) 6 C. J. p. 780.