SMITH v. CARLSON



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:SMITH v. CARLSON

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 SMITH v. CARLSON
2018 OK CIV APP 55
Case Number: 115907
Decided: 08/08/2018
Mandate Issued: 09/05/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 55, __ P.3d __

 

LINDA SMITH, Plaintiff/Appellant,
v.
ANGEL CARLSON, Defendant/Appellee.

APPEAL FROM THE DISTRICT COURT OF
WASHINGTON COUNTY, OKLAHOMA

HONORABLE RUSSELL VACLAW, TRIAL JUDGE

REVERSED AND REMANDED WITH INSTRUCTIONS

Trey Abraham, LOUIS ABRAHAM III P.C., Tulsa, Oklahoma, for Plaintiff/Appellant

Steve E. Chlouber, FULLER, CHLOUBER & FRIZZELL, L.L.P., Tulsa, Oklahoma, for Defendant/Appellee

DEBORAH B. BARNES, PRESIDING JUDGE:

¶1 Linda Smith appeals from the trial court's order denying her motion for new trial in response to the court's order granting Angel Carson's motion to disqualify Smith's counsel for conflict of interest and ordering her counsel to withdraw. We reverse the order denying Smith's motion for new trial and remand with instructions to vacate the order disqualifying her counsel.

BACKGROUND

¶2 The underlying lawsuit, filed in June 2014, arose out of the sale of a particular piece of property in 2009 (the 2009 deed) by Smith to Carlson. Smith alleged numerous theories of recovery including breach of contract, fraud in the inducement, and unjust enrichment and sought damages, punitive damages and "such other and further relief, at law or in equity, to which she may show herself justly entitled." Though not among the instruments in the record on appeal, an answer was apparently filed by Carlson. In May 2015, Smith filed a motion for partial summary judgment in which she asked for cancellation of the 2009 deed, immediate possession of the property, and a reasonable attorney's fee and costs. Thereafter, Smith filed an application to have her motion deemed confessed because, she alleged, while Carlson's then attorney acknowledged at a hearing held in May 2015 that she had received service of the motion, no response or brief had yet been filed by Carlson. On June 18, 2015, the court issued its order granting Smith's motion and ordered the 2009 deed canceled, ordered immediate possession to Smith, and ordered the execution and delivery of any conveyances or deeds by Carlson to Smith "to establish and maintain marketable title to the property in [Smith]."

¶3 On June 26, 2015, Carlson filed a motion to vacate the partial summary judgment order alleging, among other reasons, that Carlson's former counsel failed to adequately represent her by not responding to Smith's motion. She further alleged various issues of fact remained regarding Smith's claims, and alleged those claims were barred by the statute of limitations. On July 14, 2015, Smith responded and objected to the motion to vacate and alleged, among other things, that after the court's summary judgment order and in "contravention" of that order, "Carlson removed fixtures, furnishings and equipment from the property," and failed to sign and deliver a deed to Smith though Carlson's former attorney had been requested to do so by Smith. Smith also alleged Carlson's former attorney had not withdrawn as counsel of record from the case.[1]

¶4 On September 30, 2015, Carlson filed a response to Smith's previous motion for summary judgment and filed a cross-motion for summary judgment. Carlson set forth various arguments why she, not Smith, was entitled to summary judgment including exhibits and transcripts from a different lawsuit involving different parties, one of whom was represented by Smith's attorney, in support of Carlson's arguments in defense against Smith's claims. On October 6, 2015, the trial court granted Carlson's motion to vacate the June 18, 2015 partial summary judgment.[2]

¶5 The trial court thereafter set the matter for pretrial on February 16, 2017, and for jury trial on March 6, 2017.

¶6 On January 18, 2017, Carlson filed a motion to disqualify Smith's attorney asserting she "recently has learned" that on July 14, 2015, the same day Smith filed her response to Carlson's motion to vacate the June 2015 partial summary judgment, Smith deeded to her attorney an undivided one-third interest in the property at issue in this lawsuit.[3] Carlson, referencing Rules 1.8(i)[4] of the Oklahoma Rules of Professional Conduct, 5 O.S. 2011, ch. 1, app. 3-A, asserted her "counsel recently learned of this conflict and must bring it to the Court's attention."[5] Carlson asserted Smith's attorney was required to withdraw from representing her pursuant to Rule 1.16(a)(1).[6]

¶7 Smith asserted Carlson and her counsel were aware of the 2015 quitclaim deed from at least June 2016 and attached a copy of an excerpt from a June 2016 deposition of Smith during which Carlson's attorney allegedly asked her about the 2015 quitclaim deed. She also asserted, among other matters, that the June 2015 order granting her partial summary judgment canceled the 2009 deed and that order "was valid and subsisting" "[d]uring all the time in question." She also claimed the quitclaim deed "comports completely with the written fee agreement between" herself and her attorney arguing that while Rule 1.8(i) prohibits an attorney from acquiring a proprietary interest in the subject matter of the client's litigation, the Rule states an attorney may "acquire a . . . contract to secure the lawyer's fee" and "contract with a client for a reasonable contingent fee in a civil case." Smith offered to make the contingent fee contract available for the court's in camera review.

¶8 The hearing on the disqualification motion was held February 2, 2017. Apart from the court's prior orders and the briefs and exhibits appended to them, no other evidence was introduced at the hearing. The majority of the hearing consisted of the arguments of counsel and the trial court's inquiries.

¶9 Carlson argued there was a conflict because Smith's attorney obtained a proprietary interest in the property, the property is the subject of the litigation, and her attorney acquired the interest after the June 18, 2015 partial summary judgment order, but on the same date she responded to Carlson's motion to vacate that judgment. Carlson's attorney also argued the court's June 18, 2015 order that canceled the 2009 deed (relief she asserted and had asserted in previous hearings was not requested in Smith's petition), and the court's subsequent order that vacated the June 18, 2015 order but kept Smith in possession of the subject property, put a cloud on Carlson's title. That cloud, Carlson argued, caused problems for her in a foreclosure action pending against her in a different court and in which Smith's attorney has now been made a party because of his one-third interest.

¶10 Smith argued Carlson's arguments about the relief she sought in this action -- return of the property -- had been raised numerous times by her in this litigation and had not succeeded. Whether she should remain in possession of the property, Smith argued, is one that the jury was to decide in March 2015. The court agreed that the issue of Smith's possession of the property was not an issue as to the motion to disqualify. Smith also argued Carlson and her counsel were aware of the quitclaim deed for about seven months prior to the motion to disqualify but did not raise the issue until two months before the jury trial was scheduled. She also argued the written contingent fee agreement set out how her attorney was to be paid for his legal services.

¶11 The court stated it did not need to see the contingent fee agreement because "I don't think [the contract] is any objection by [Carlson's attorney], per se, to what I understand. The timing on it to me is what I am concerned about." The court was concerned with why Smith's attorney would accept the one-third interest before the litigation ended -- including appeal. Smith argued that as of June 18, 2015, regardless of what may happen at some later point, she was the owner of the property and could do with it what she chose. Her attorney also offered to deed the property back to Smith, to which the court replied, "I don't know if that ship has sailed," and asked Carlson's attorney if that course of action would "resolve [the] issue." Carlson's attorney said it would not but did so arguing about the relief issue in the current litigation the court already stated had no bearing on disqualification and argued about matters in other lawsuits involving these and other, related litigants in which Smith's attorney and Carlson's attorney were representing various parties.

¶12 The trial judge reiterated its concern "that [Smith's attorney] took the [June 18, 2015] order, [was] served notice of a . . . motion to vacate, and then carried out the conveyance of that property to himself knowing that the order could have been vacated. That is problematic to me." Smith's counsel urged the court to consider Smith's situation, the harm that would occur to her at this stage of the litigation if he were disqualified, and the likelihood that she could not find another lawyer because "this case has mushroomed[.]" He again requested that he be permitted to convey the property to Smith to avoid disqualification. The court replied:

I sympathize with [Smith's] situation as you have described it, because that is very difficult and the approach that this Court could take could be heavy-handed to her, with all due respect, I also have to lay that at your feet with the conveyance to yourself after the motion to vacate had been filed, that makes it very difficult for me to look past that, and I -- regretfully, I think I have to sustain their motion and I will."

¶13 On February 9, 2017, Smith's attorney conveyed his interest in the subject property to Smith by quitclaim deed that was recorded the same day. Also on that date, Smith filed a motion for new trial. On March 2, 2017, the trial court issued its order disqualifying Smith's attorney and ordering him to withdraw from the case. The court struck the pretrial conference and jury trial from the record and set the case for status hearing on that day, March 2, 2017. The court heard counsel's arguments and, with respect to the February 9, 2017 deed, stated:

I am not going to comment on it other than to say I am going to deny the request for new trial and your record is preserved for appeal. You may present that to the appellate court if you wish on whether or not your removal by filing a quit claim deed changes anything. For me the issue still comes down to -- I understand you had a contingency fee agreement; however, the taking of the property in your name on the same day that you had responded to the motion to vacate led me to believe that there was knowledge that the case wasn't over. It had not been concluded yet and yet you took that interest and then it proceeded" [until] I ruled on this . . . , so for quite a long time that interest remained and I think it creates the conflict [Carlson's attorney] has presented to the Court[.]

Thereafter, on March 10, 2017, the trial court entered its order denying Smith's motion for new trial. She appeals.

STANDARD OF REVIEW

¶14 "In considering the correctness of the trial court's order overruling [a motion for new trial], we first note that such motions are directed to the sound discretion of the trial court, and will not be disturbed on appeal in the absence of an abuse of that discretion." Nu-Pro, Inc. v. G.L. Bartlett & Co., Inc., 1977 OK 226, ¶ 5, 575 P.2d 620 (footnote omitted). To reverse a trial court on the ground of an abuse of discretion, it must be found that the trial court made a clearly erroneous conclusion and judgment, against reason and evidence. "[A] clear abuse of discretion standard includes appellate review of both fact and law issues." Christian v. Gray, 2003 OK 10, ¶ 43, 65 P.3d 591. "An abuse of discretion occurs when a court bases its decision on an erroneous conclusion of law, or where there is no rational basis in evidence for the ruling." Fent v. Okla. Natural Gas Co., 2001 OK 35, ¶ 12, 27 P.3d 477 (citation omitted). On this appeal that determination requires examination of the underlying ruling on the motion to disqualify. In reviewing an order on a motion to disqualify an attorney, "we review the trial court's findings of fact for clear error and carefully examine de novo the trial court's application of ethical standards." Ark. Valley State Bank v. Phillips, 2007 OK 78, ¶ 8, 171 P.3d 899 (footnote omitted).

ANALYSIS

¶15 Smith raises several propositions of error on appeal including the validity of the contingent fee contract under which he was to receive a percentage of the subject property. She argues, among other things, the trial court abused its discretion in determining the interest her attorney received pursuant to that contract was, thus, a violation of Rule 1.8(i). She further argues Carlson is a stranger to her attorney-client relationship and the disqualification order was a denial of her due process right to be represented by counsel of her choice. For these reasons, she asserts, the trial court abused its discretion in denying her motion for new trial.

¶16 As to the validity of a contingent fee contract in which an attorney and client agree that the attorney will receive as a fee a percentage of property that is the subject of the litigation, the Oklahoma Supreme Court has determined, in a circumstance wherein

[a]n attorney agreed to conduct litigation for quieting title to his client's real estate, and the client agreed as compensation "to make, execute, and deliver to said second party (attorney) a good and sufficient warranty deed conveying an undivided one-half interest in and to said lands above described." Held, that the agreement constituted an equitable, conditional assignment to the attorney of an interest in the subject of litigation.

. . . . Such contract was not illegal or against public policy.

Lashley v. Moore, 1925 OK 397, ¶ 0, 240 P. 704 (Syllabus by the Court) (emphasis added). See Emery v. Goff, 1947 OK 93, ¶ 0, 180 P.2d 175 (Syllabus by the Court) ("Where the guardian of a minor enters into a contingent fee contract with an attorney to handle litigation for the recovery of lands for the ward's estate whereby said attorney is to receive a specified undivided interest in said lands, and the contract is duly approved by the county court as necessary for the proper protection of the ward's estate, such contract is valid and binding upon the ward, and constitutes an equitable conditional conveyance of the interest to the attorney, to take effect on successful completion of the legal services."). See also In re Guardianship of Stanfield, 2012 OK 8, ¶ 14 n.18, 276 P.3d 989 (favorably discussing Emery wherein a "deed was executed for payment of legal services previously rendered pursuant to a contractually created contingent fee agreement"). Consequently, as argued by Smith, her contingent fee contract with her attorney gave him the expectancy of a percentage of the subject property in payment for legal services he performed with respect to that property. Because such contracts are not illegal or against public policy, Smith argues, they come within the exceptions to Rule 1.8(i) and, therefore, do not violate the Rules of Professional Conduct.[7]

¶17 We note nothing in the record or, more significantly, presented at the hearing on the motion to disqualify, supports a conclusion that Smith's contingent fee agreement was invalid or failed to give her attorney an interest in the subject property as a fee for his legal services. In fact, the trial court appeared to assume the contingent fee contract was valid and provided for payment of that fee by a percentage of Smith's property. The problematic issue for the trial court was that the fee was paid -- the property interest was conveyed -- at a time prior to the conclusion of the litigation.

¶18 While Smith argues, in effect, that the services he rendered were concluded at the time of the June 18, 2015 partial summary judgment order that gave Smith title to the subject property and canceled the 2009 deed, the trial court certainly had a legal and factual basis for determining that the litigation was not concluded, Smith's attorney knew it was not concluded, and yet the attorney took the interest while the litigation continued. It is the attorney's receipt of this property prior to the completion of the legal services that takes the current matter outside the facts of decisional authority such as Lashley and Emery. Yet, the question remains whether an attorney should be disqualified when the client opposes such disqualification and the interest is returned to the client.

¶19 The Oklahoma Supreme Court has explained that

a party litigant in a civil proceeding still has a fundamental right to employ and be heard by counsel of his or her own choosing. The right to select counsel without state interference is implied from the nature of the attorney-client relationship in our adversarial system of justice, where an attorney acts as the personal agent of the client and not the state. It is also grounded in the due process right of an individual to make decisions affecting litigation placing his or her property at risk. An individual's decision to employ a particular attorney can have profound effects on the ultimate outcome of litigation. Legal practitioners are not interchangeable commodities. Personal qualities and professional abilities differ from one attorney to another, making the choice of a legal practitioner critical both in terms of the quality of the attorney-client relationship and the type and skillfulness of the professional services to be rendered.

Ark. Valley State Bank v. Phillips, 2007 OK 78, ¶ 12, 171 P.3d 899 (emphasis omitted) (footnotes omitted). The Supreme Court further explained,

Nevertheless, the right to select one's own counsel is not absolute. A litigant's choice of counsel may be set aside under limited circumstances, where honoring the litigant's choice would threaten the integrity of the judicial process. This most often arises where an attorney's compliance with ethical standards of professional responsibility are challenged. It is this Court's nondelegable, constitutional responsibility to regulate both the practice and the ethics, licensure, and discipline of the practitioners of the law, and in doing so, to preserve public confidence in the bar and the judicial process. However, motions to disqualify counsel for failure to comply with the Rules of Professional Conduct are not to be used as procedural weapons. Disqualification is such a drastic measure that it should be invoked if, and only if, the Court is satisfied that real harm is likely to result.

Id. ¶ 13 (footnotes omitted) (emphasis added). Referencing the holding in Towne v. Hubbard, 2000 OK 30, 3 P.3d 154, concerning a different conflict of interest issue, the Supreme Court stated:

There, [we] held that the proper test for granting a motion to disqualify counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. The burden rests with the moving party to establish the likelihood of such harm by a preponderance of the evidence.

Arkansas Valley, ¶ 23 (footnotes omitted). The Court thus concluded:

A party litigant's right to employ the counsel of his or her choice is fundamental. A disqualification order is a drastic measure. The standard for granting a motion to disqualify counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. 

Id. ¶ 25 (emphasis added).

¶20 In the present case, the trial court made no determination about whether "real harm is likely to result," id. ¶ 13, or "any real harm to the integrity of the judicial process is likely to result," id. ¶ 25, if Smith's attorney is not disqualified. The trial court seemed to believe it could not consider that issue, and whether whatever conflict may have been present could be cured by the conveyance of the interest in the subject property to Smith. In this regard, we conclude the trial court was in error.

¶21 First, no evidence of harm to Carlson by Smith's attorney's receipt of the property interest was presented at the hearing. Carlson made some argument about a foreclosure proceeding to which she was a party that was complicated in some way by the attorney's ownership interest in Smith's property. However, no evidence about this cloud of title issue was presented, and no evidence was presented or argument made that Carlson was adversely affected in the present litigation by the transfer of interest and no finding of such harm was made by the trial court. Second, no evidence was presented that Smith -- the person whose interest is protected by Rule 1.8(i) -- was harmed by the transfer. For instance, no evidence or argument was presented that the actual transfer of the interest to Smith's attorney during the litigation gave him any greater interest in the litigation than he had by virtue of his contingent fee agreement, and no evidence or argument was presented that Smith was dissatisfied with his representation or otherwise wished to discharge him but could not because of the interest he had in the subject property.

¶22 Third, and significantly, Smith is harmed by the disqualification of her attorney, a harm the trial court specifically noted but evidently believed it could not consider. The contentious litigation in this lawsuit had "mushroomed" since its inception in 2014 and was a month from jury trial at the time of the hearing. Smith is elderly, disabled, and unemployed. She lives alone and has no vehicle. Her sole income is $700 per month in Social Security benefits. At the time of the March 2, 2017 hearing on her motion for new trial, Smith had still been unable to secure new counsel. The court was informed that not even legal aid was able to help her. Thus, despite "her best efforts," she had been unable to secure new counsel.

¶23 Whether the actions of Smith's attorney would subject him to disciplinary proceedings is not the question we are answering and we offer no opinion about that matter.[8] The question before us is whether the standard that must be met for disqualification was met. "The burden rests with the moving party to establish the likelihood of [harm to the integrity of the judicial process] by a preponderance of the evidence." Arkansas Valley, ¶ 23 (footnote omitted). We conclude under the facts here presented, including the attorney's relinquishment of the property interest, that Carlson had not satisfied the standard of whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. We, therefore, conclude the trial court abused its discretion in denying Smith's motion for new trial.

CONCLUSION

¶24 We conclude the trial court abused its discretion in denying Smith's motion of new trial; consequently, we reverse the order and remand the cause with instructions to vacate the order disqualifying Smith's counsel.

¶25 REVERSED AND REMANDED WITH INSTRUCTIONS.

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] Smith also argued that for over a year Carlson failed to present her defenses, failed to comply with the court's scheduling order, failed to address responsibilities incident to pretrial, and failed to respond to the motion for summary judgment. Smith argued Carlson had been present for most of the hearings and was fully apprised of key elements of the case and was represented by two attorneys during the course of the litigation; consequently, Smith argued, the motion to vacate should be denied. Smith also filed a first supplement in response to the motion to vacate concerning deposition testimony by Carlson that Smith gifted the property to her; Smith denied any such gift.

[2] Smith had also filed a motion for summary judgment in May 2015. The court ordered Carlson to reply to that motion by September 30, 2015, and set the matter for hearing on November 12, 2015. The court's disposition docket shows that on November 12, 2015, the trial court denied both parties' competing motions for summary judgment.

[3] The quitclaim deed was filed on July 14, 2017.

[4] Rule 1.8(i) provides, in part, as follows: "A lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client . . . ."

[5] Carlson also asserted Rule 1.8(a) regarding business transactions between a lawyer and a current client was an applicable basis for disqualification in this case. However, that basis for disqualification was not pursued at the hearing, no evidence was presented showing the Rule's requirements were not met by Smith's attorney, the court's disqualification order was not based on Rule 1.8(a), and no argument regarding that Rule as a basis for disqualification is offered by Carlson on appeal.

[6] Rule 1.16(a)(1) provides, in part, as follows: "Except as stated in paragraph (c), a lawyer shall not represent a client or, where representation has commenced, shall withdraw from the representation of a client if: (1) the representation will result in violation of the Rules of Professional Conduct or other law[.]"

[7] Though not mandatory authority, the comments to the rules are persuasive authority, see Miami Bus. Servs., LLC v. Davis, 2013 OK 20, ¶ 23, 299 P.3d 477; Comment 16, titled "Acquiring Proprietary Interest in Litigation," states, in part, as follows:

Paragraph (i) states the traditional general rule that lawyers are prohibited from acquiring a proprietary interest in litigation. Like paragraph (e), the general rule, has its basis in common law champerty and maintenance and is designed to avoid giving the lawyer too great an interest in the representation. In addition, when the lawyer acquires an ownership interest in the subject of the representation, it will be more difficult for a client to discharge the lawyer if the client so desires. The Rule is subject to specific exceptions developed in decisional law and continued in these Rules. . . . In addition, paragraph (i) sets forth exceptions for liens authorized by law to secure the lawyer's fees or expenses and contracts for reasonable contingent fees.

[8] As stated by the Oklahoma Supreme Court in Towne v. Hubbard, 2000 OK 30, 3 P.3d 154, "it is principally a lawyer's responsibility when undertaking a representation to settle questions regarding possible conflicts of interest"; however, "a court may also consider the question, when it is appropriately raised by the motion of one of the parties, by acting in the exercise of its power to regulate the conduct of those involved in a judicial proceeding before it[.]" Id. ¶ 15 (footnote omitted). However, the Oklahoma Supreme Court has repeatedly stated:

This Court is vested with exclusive and original jurisdiction over attorney disciplinary proceedings. It is this Court's constitutional responsibility to regulate the practice of law and the licensure, ethics, and discipline of legal practitioners in this state. We exercise the responsibility to decide whether attorney misconduct has occurred and what discipline is appropriate, not for the purpose of punishing the attorney, but to assess his or her continued fitness to practice law and to safeguard the interests of the public, the courts, and the legal profession. 

State ex rel. Okla. Bar Ass'n v. Knight, 2018 OK 52, ¶ 6, 421 P.3d 299 (emphasis added) (citations omitted).






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1947 OK 93, 180 P.2d 175, 198 Okla. 534, EMERY v. GOFF
Discussed
 2001 OK 35, 27 P.3d 477, 72 OBJ 1185, FENT v. OKLAHOMA NATURAL GAS, CO.
Discussed
 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Discussed
 2007 OK 78, 171 P.3d 899, ARKANSAS VALLEY STATE BANK v. PHILLIPS
Discussed at Length
 2012 OK 8, 276 P.3d 989, IN THE MATTER OF THE GUARDIANSHIP OF STANFIELD
Discussed
 2013 OK 20, 299 P.3d 477, MIAMI BUSINESS SERVICES, LLC v. DAVIS
Discussed
 1977 OK 226, 575 P.2d 620, NU-PRO, INC. v. G.L. BARTLETT & CO., INC.
Discussed
 2018 OK 52, 421 P.3d 299, STATE ex rel. OKLAHOMA BAR ASSOCIATION v. KNIGHT
Discussed
 2000 OK 30, 3 P.3d 154, 71 OBJ 960, Towne v. Hubbard
Discussed at Length
 1925 OK 397, 240 P. 704, 112 Okla. 198, LASHLEY v. MOORE
Discussed


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA