## FRY et al. v. WOLFE.

No. 12374—Opinion Filed Jan. 15, 1924.

Rehearing Denied March 10, 1925.

**1. Appeal and Error — Filing Motion for New Trial—Record.**

A motion to dismiss an appeal in the Supreme Court will not be sustained where the record shows that a motion for a new trial was actually filed and passed upon by the trial court within three days after the rendition of the judgment, although the record may fail to show affirmatively that the motion for new trial was on file at the time it was overruled.

**2. Trial—General Finding—Effect.**

Where a case is tried to the court without a jury, and the court makes no special findings of fact, a general finding in favor of plaintiff includes a finding of every fact necessary to support the judgment.

**3. Sufficiency of Evidence.**

Record in the instant case examined, and held, that the judgment of the trial court is reasonably supported by the evidence in the case.

**4. Evidence — Presumptions — Failure to Offer Evidence.**

When it lies within the power of a party to an action to produce evidence upon an issue and he fails, the presumption follows that the evidence, if produced, would be unfavorable to the cause of such party.

**5. Attorney and Client—Contracts—Statute Controlling.**

Section 248, Rev. Laws 1910 (Harris-Day Code), was an amendment of section 2, chapter 4, Session Laws of 1909, and did not go into effect in this state until May 16, 1913, and a contract between client and attorney dated and executed in 1912 depended for its effect and validity upon sections 1 and 2, chapter 4, Session Laws of 1909.

**6. Same—Lien for Attorney's Fee—Effect of Settlement by Client.**

Under the provisions of section 1, chapter 4, Session Laws of 1909, and under the rules of the common law generally, no compromise or settlement entered into by a client could affect or abrogate the lien of his attorney, whether such settlement or compromise had been made with the adverse party to the litigation or with a stranger to the action.

**7. Statutes—Vested Right in Mode of Procedure.**

No person has a vested right in any particular mode of procedure, and if, before the trial of the cause, a new law of procedure goes into effect, it governs, unless the statute itself provides otherwise.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Creek County; Lucien B. Wright, Judge.

Action by C. Dale Wolfe against Robert Fry and another to recover an attorney's fee. Judgment for plaintiff, and defendants appeal. Affirmed.

Hagan & Gavin, for plaintiffs in error.

C. Dale Wolfe, for defendant in error.

Opinion by FOSTER, C. This is an appeal to reverse a judgment of the district court of Creek county awarding and setting apart to the defendant in error the one-half undivided interest in a tract of land as an attorney's fee.

On the 15th day of June, 1912, a written contract was executed by Mack Lowe, guardian of Tom Lowe, a minor, and the defendant in error, whereby the defendant in error was authorized to enter suit on behalf of said minor in the proper court for the recovery of the Haga Monday allotment, and whereby the defendant in error was to receive a fee of one-half of said land in the event the action was successful.

Thereafter, on the 24th day of March, 1915, the defendant in error as such attorney filed suit in the district court of Creek county for the recovery of said land and endorsed on the petition filed the words "lien claim."

On the 4th day of May, 1917, a judgment was obtained on behalf of the said Mack Lowe for the possession of the land and cancelling all outstanding clouds upon the title. Upon the rendition of said judgment the defendant in error caused his lien claim to be endorsed on the journal entry of judgment and upon the judgment docket opposite the entry of said judgment.

On the 16th day of December, 1915, while said action on behalf of Mack Lowe was pending in the district court of Creek county, the plaintiffs in error, Robert Fry and Robert E. Lynch, secured from Mack Lowe a warranty deed to the Haga Monday allotment, the title to which was then in litigation in the district court of Creek county.

On the 11th day of July, 1918, Robert Fry and R. E. Lynch had their deed of December 16, 1915, approved by the county court of Seminole county, that being the county in which Haga Monday resided at the time of her death.

The judgment from which this appeal has been taken arose out of a proceeding filed by the plaintiffs in error on the 5th day

of July, 1917, in the same court in which the original judgment was rendered, to substitute themselves as parties plaintiff in the original action wherein judgment had been rendered in favor of their grantor, Mack Lowe.

On April 16, 1919, a supplemental motion to substitute was filed by plaintiffs in error. The defendant in error had previously filed in said court a petition and motion in which he asked the court to adjudge that by reason of his contract with Mack Lowe he was entitled to an undivided one-half interest in the real estate in controversy.

Responses were filed to each of these pleadings by the adverse party and on the 21st day of December, 1920, the matter came on for hearing before Lucien B. Wright, district judge, on the motion of plaintiffs in error to be substituted as parties plaintiff in the original action, and the motion and petition of the defendant in error for a judgment awarding him an undivided one-half interest in the Haga Monday allotment.

After hearing the evidence the trial resulted in a judgment for the defendant in error for one-half of the land recovered for Mack Lowe in the original action, directing the plaintiffs in error to convey said interest to the defendant in error, and denyng them any relief under the original judgment until such conveyance had been made. From a judgment so rendered the cause is brought regularly on appeal to this court.

The following errors are assigned:

(1) That the trial court erred in adjudging the defendant in error to be the owner of an undivided one-half interest in the premises in litigation.

(2) That the trial court erred in denying motion of plaintiffs in error that all rights accruing under the judgment in the case of Lowe v. Ball et al. inure to the benefit of plaintiffs in error.

(3) That the judgment of the trial court appealed from is against the weight of the evidence and contrary to law.

(4) That the trial court erred in rendering judgment in favor of the defendant in error and against the plaintiffs in error.

(5) That the trial court erred in adjudging defendant in error to be entitled to an attorney's lien on the cause of action involved in the case of Lowe v. Ball et al.

(6) That the trial court erred in admitting evidence on the part of defendant in error.

(7) That the trial court erred in overruling the motion of plaintiffs in error for a new trial.

The defendant in error has filed a motion to dismiss the appeal of plaintiffs in error, claiming that the record does not contain an order of the trial court overruling the motion for a new trial, and that the trial court did not pass upon the motion for a new trial filed in this cause, and purported errors occurring at the trial being the only matters urged in the assignments of error and brief of plaintiffs in error, there is nothing before this court for review, and this court being without jurisdiction, the appeal should be dismissed.

We do not think there is any merit in this claim. The record shows that the motion for a new trial was filed and passed upon within the statutory period of three days, and while the record indicates that the motion for a new trial may have been passed upon before the motion was actually filed, still it must be presumed that the trial court had before it the motion for a new trial although it may not have had the filing mark of the clerk placed upon it until two or three days later. We think when a moton for a new trial has been filed within the statutory period and passed upon by the court within that period that this constitutes a substantial compliance with the law, and that the failure of the record to affirmatively show that the motion had been passed upon after the filing of the motion will not be fatal upon appeal.

The motion to dismiss is overruleα.

Counsel for plaintiffs in error contend that the attorney's contract between the defendant in error and Mack Lowe is invalid, first, because not properly approved by the county court; second, because it did not constitute a valid lien upon the subject-matter of the action under the controlling provisions of the statutes of Oklahoma relating to contracts between attorney and client.

It is insisted by the defendant in error, on the other hand, that his contract of employment was: first, valid, in its inception; second, if invalid in its inception, was nevertheless valid because the plaintiffs in error adopted his contract after they purchased the land from Mack Lowe; and, third, that under the laws of Oklahoma in force at the time he made his contract, he had a valid lien for the full one-half undivided interest upon the real estate recovered.

Plaintiffs in error say in their brief:

"Said decision of Capps v. Hensley (23 Okla. 311, 100 Pac. 515), however, seems to recognize that a stranger to a contract can

adopt it and, therefore, it may perhaps be true that plaintiffs in error could have adopted the contract of June 9, 1912, and made it binding on them."

It is clear that if the contract between Mack Lowe and the defendant in error was adopted by the plaintiffs in error after they had purchased the land from Mack Lowe, they would be liable irrespective of whether the contract was void in its inception for lack of proper approval by the county court.

The trial court found in favor of the defendant in error upon all issues, and this involved a finding that the plaintiffs in error did adopt the contract as originally made by defendant in error with Mack Lowe after they purchased the land.

Was there any evidence introduced reasonably tending to support the findings of the trial court that the plaintiffs in error did adopt the contract? Let us briefly review the testimony.

The evidence discloses that practically a year and a half intervened between the time the plaintiffs in error purchased the land from Mack Lowe and the time judgment was rendered for Mack Lowe in the district court of Creek county, recovering said land and quieting his title thereto.

Mr. Lynch, one of the plaintiffs in error, testified that he knew of the pendency of the suit by his grantor, Mack Lowe, at the time he obtained his deed.

The defendant in error testified that early in the year 1916, after plaintiffs in error had obtained their deed, but long before the suit was finally terminated in May, 1917, he showed B. C. Conner, Esquire, who was representing plaintiffs in error as their attorney, his contract with Mack Lowe, and that Mr. Conner thereupon authorized him to proceed with the case in the name of the plaintiff, Mack Lowe, and that Mr. Lynch and Mr. Fry would satisfy his fees; that later Mr. Conner appeared at one of the preliminary hearings of the case in the district court at Sapulpa, Okla., and stated in open court that plaintiffs in error had purchased the land from Mack Lowe, and that they wanted the case to proceed to final judgment in the name of Mack Lowe as originally instituted under the management of defendant in error as their attorney; that he conducted the case to final judgment under this understanding, furnishing Mr. Conner copies of pleadings that he filed from time to time in the case, and that plaintiffs in error made no attempt to intervene and have themselves substituted as parties plaintiff until after final judgment was rendered in the case; that he was informed by Mr. Conner that it was understood by plaintiffs in error that Mack Lowe

only owned a one-half interest in the land.

B. C. Conner testified that he was employed generally by the plaintiffs in error to look after the litigation then pending, and that if he employed the defendant in error to conduct the litigation, he understood his clients would have been bound thereby, as he had authority to proceed as he thought proper.

Mr. Lynch, one of the plaintiffs in error, while on the stand did not undertake to deny the authority claimed by his counsel, Mr. Conner, to bind him by the employment of the defendant in error.

There was considerable correspondence introduced into the record between the defendant in error and B. C. Conner during the years 1916 and 1917, relating to the progress of the litigation then pending, and in connection with an adjustment or settlement of the claim of the defendant in error for his attorney's fee, but no ultimate agreement was ever reached between them.

As we view the case the statements contained in these letters tend to corroborate the contention of defendant in error that he was in full control of the litigation with the approval of plaintiffs in error, and was simply endeavoring to reach in the meantime a settlement for cash whereby he could retire from the case and turn the entire matter over to plaintiffs in error, and tends to contradict the theory of plaintiffs in error to the effect that they were endeavoring to make a contract with the defendant in error for the management of the case, which was unsuccessful.

Surely, if the plaintiffs in error did not adopt the contract which defendant in error had made with Mack Lowe, they would not have suffered the case to proceed as they did without their active intervention and without attempting in some lawful manner to get control of the litigation.

In view of the fact that defendant in error recovered the full title to the entire 160 acres, and in view of the fact that the land was being claimed adversely, it is clear to us that the contract of defendant in error could have been adopted by plaintiffs in error without seriously jeopardizing the interests which they obtained under their deed from Mack Lowe.

The circumstances surrounding the transaction, the interest of plaintiffs in error in the outcome of the trial, their conduct in permitting the cause to proceed under the exclusive management of defendant in error, and upon the successful conclusion of the

litigation, their conduct in accepting the results of the contract, all strongly and logically tend to support the testimony of the defendant in error that he was authorized to proceed under his contract with Mack Lowe.

In these circumstances, we think that the evidence before the trial court reasonably tended to support a judgment and finding by it that plaintiffs in error had adopted the original contract between Mack Lowe and the defendant in error and such finding and judgment will not be disturbed on appeal. Missouri, O. & G. Ry. Co. v. Smith, 55 Okla. 12, 155 Pac. 233; Midland Valley R. Co. v. Goble, 77 Okla. 206, 186 Pac. 723, and numerous other cases.

It has long been the established rule of this court that a general finding of the trial court in favor of a party includes a special finding upon every fact necessary to support a general judgment. Shawnee Life Ins. Co. v. Watkins, 53 Okla. 188, 156 Pac. 181; and many other authorities.

The general judgment of the trial court in favor of the defendant in error involved a finding that his contract with Mack Lowe was adopted by plaintiffs in error, and is reasonably supported, in our judgment, by the evidence in the case.

Should we apply the equity rule, as plaintiffs in error insist should be applied, still we are not convinced that the judgment of the trial court is clearly against the weight of the evidence, and in cases of purely equitable cognizance, the Supreme Court on appeal is not authorized to disturb the judgment of the trial court unless it is convinced that such judgment is clearly against the weight of the evidence. Johnson v. Johnson, 82 Okla. 259, 200 Pac. 204.

The testimony of the defendant in error concerning the agreement of plaintiffs in error to assume and pay the fee provided for in his contract is positive and clear and is corroborated and supported by many cogent circumstances and inferences surrounding the transaction.

The contention of plaintiffs in error that Mr. Conner was not clothed with the authority which he claimed to possess to employ counsel to prosecute the action originally instituted by Mack Lowe, is, we think, untenable.

The record shows that Mr. Lynch, one of the plaintiffs in error, who testified in the case after Mr. Conner had testified, failed to contradict Mr. Conner's testimony to the effect that he possessed authority to employ counsel for plaintiffs in error to prosecute the case, and we think his failure to deny such authority justified the inference and conclusion that such authority had been given.

In Moore v. Adams et al., 26 Okla. 48, 108 Pac. 392, it is said in the syllabus:

"When it lies within the power of a party to an action to produce evidence upon an issue and he fails, the presumption follows that the evidence, if produced, would be unfavorable to the cause of such party."

See, also, Atchison, T. & S. F. Ry. Co. v. Davis & Young, 26 Okla. 359, 109 Pac. 551; St. Louis & S. F. R. Co. v. Bruner, 52 Okla. 349, 152 Pac 1103.

It is next contended by plaintiffs in error that the contract of the defendant in error with Mack Lowe, even if adopted by them, is still invalid for the reason that under the provisions of section 249, Rev. Laws 1910, which it is insisted controlled and governed the contract in question, limited the recovery of an attorney to "reasonable compensation for all services performed." and that the action cannot, therefore, be sustained.

It is argued that while section 1, chapter 22, Session Laws of 1919, repealed section 249, Rev. Laws 1910, and gave the attorney the right to recover the full amount of his fee due him under his contract of employment, the 1919 statute cannot be given a retrospective effect upon rights accruing prior to the enactment thereof; that the rights of defendant in error being fixed by a contract dated and executed in 1912, must depend for its effect and validity upon section 249, Rev. Laws 1910, and not upon section 1, chapter 22, Session Laws of 1919.

This contention cannot be sustained. Section 248, Rev. Laws 1910, was an amendment to section 2, chapter 4, Session Laws of 1909, adopted by the Code Commission of Oklahoma, and did not go into effect until May, 16, 1913. Section 2, chapter 4, Session Laws of 1909, provided:

"It shall be lawful for attorneys to contract for a percentage or portion of the proceeds of a client's cause of action or claim, not to exceed fifty per centum of the net amount of such judgment as may be recovered, or such compromise as may be made with the consent of the attorney, whether the same arise ex contractu or ex delicto, and no compromise or settlement entered into by a client without such attorney's consent, shall affect or abrogate the lien provided for in section one hereof. * * *"

Section 1 of the act, in part, provided as follows:

"From the commencement of an action at law or equity or from the filing of an answer containing a counterclaim, the attorney or attorneys who represent the party in whose behalf such pleading is filed shall have a lien upon his client's cause of action or counterclaim, and same shall attach to any verdict, report, decision, finding or judgment in his client's favor, and the proceeds thereof, wherever found, shall be subject to such lien and no settlement between the parties, without the approval of the attorney, shall affect or destroy such lien.

"Such lien shall attach from and after such attorney is contracted with. * * *"

It will thus be seen that sections 1 and 2, chapter 4, Session Laws of 1909, quoted supra, which was in force in this state until the Revised Laws of 1910 (Harris-Day Code) went into effect on May 16, 1913, authorized the contract involved in this case, and gave the attorney a lien from the date of the contract upon the proceeds of the cause of action for the amount contracted for, not to exceed fifty per cent. of the recovery.

Furthermore, it is our opinion that the provisions of sections 1 and 2, chapter 4, Session Laws 1909, giving an attorney a lien from the date of his contract upon the proceeds of the cause of action for the full amount contracted for, not to exceed 50 per cent. of the recovery, and providing that no compromise or settlement entered into by a client should affect or abrogate the lien provided for, carried with it a right to the enforcement of such lien in favor of the attorney whether there had been a settlement with the adverse party to the litigation or whether made with a stranger to the action.

We are strengthened in this conclusion by the fact that the courts generally, in the absence of statute, have protected and enforced the lien of an attorney upon property recovered by him as a superior right to that of any assignee of his client. See Corpus Juris, volume 6, at page 788; Hartman v. Swiger, 215 Fed. 986.

The contention of plaintiffs in error that, prior to the 1919 statute, there had been enacted no provision of law permitting the enforcement of an attorney's lien by a filing of the motion in the original action, and that such lien had to be enforced by an independent suit, cannot be sustained.

While it is true that under the law as it existed at the time of the execution of the attorney's contract in controversy there was

no provision authorizing the enforcement of the lien by motion in the original action, we think the 1919 statute which was in force at the time of the trial controlled the procedure and justified the enforcement of the lien by motion.

This part of the 1919 act related entirely to a matter of procedure as distinguished from a substantive right of contract and would control in spite of the fact that under the law as it existed at the time the contract was made such procedure was unauthorized.

In Independent Cotton Oil Co. v. Beacham, 31 Okla. 384, 120 Pac. 269, it is by our court held:

"No person has a vested right in any particular mode of procedure. and if, before the trial of the cause, a new law of procedure goes into effect, it governs, unless the statute itself provides otherwise."

Furthermore, the record shows that plaintiffs in error in the trial court waived any objection to the procedure employed, and acquiesced in it. With reference to the procedure, counsel for plaintiffs in error stated in the trial court as follows:

"It is true that under the statute it can probably be done on motion. We are not raising any point on that score. * * *"

In these circumstances we think plaintiffs in error should be precluded from raising the question of procedure for the first time in the Supreme Court. Doggett v. Doggett, 85 Okla. 90, 203 Pac. 223, and Brooks v. Tyner, 38 Okla. 271, 132 Pac. 683.

Upon careful examination of the entire record we are satisfied that the judgment of the trial court was right. and should be, and is hereby affirmed.

By the Court: It is so ordered.