## COCHRAN v. DAVIS.

No. 19816. Opinion Filed Oct. 6, 1931.

Rehearing Denied Jan. 12, 1932.

Sigler & Jackson, for plaintiff in error.

Keller & Cameron, for defendant in error.

SWINDALL, J. This action was brought by the plaintiff on reaching majority to recover the value of land purported to have been sold for cash at guardian's sale but alleged in the petition to have been exchanged by an agreement under which the guardian executed the deed upon payment of $500 of the confirmed purchase price and the execution of a conveyance of real estate taken at an agreed valuation of $2,600. Prior to the arrival of the minor at majority the grantee, the defendant, had conveyed the real estate, and the minor brought suit on the theory that he was entitled to the value of the property at the date of the alleged fraudulent conveyance made by the guardian.

Unfortunately the guardian died before the trial, and a real estate man who participated to some extent in the transactions died before the trial, and there was no witness with any appreciable knowledge of the transactions capable of testifying except the defendant. However, there was documentary evidence that in our opinion was decisive of the controversy.

The evidence shows that on July 14, 1913, an order of sale was made in the guardianship proceedings, authorizing a private sale of the minor's real estate for cash. On August 16, 1913, an order was made confirming a reported sale made August 4, 1913, to the defendant, J. K. Davis, for $3,100 cash.

The guardian's deed was dated August 21, 1913, and was filed for record August 22, 1913, at 3 o'clock p. m. On August 22nd a petition was filed by the guardian reciting that he had on hand $3,100 as proceeds of sale and praying for leave to invest it in certain real estate described in the petition, which the petition alleged could be purchased for $2,600. An order was made not reciting its date, but reciting that it was made the day the petition was filed, and bearing a file mark of the same day, August 22, 1913, in which it was recited that the judge had examined the real estate described; and the order authorized that it be purchased from the defendant, J. K. Davis, and that the guardian obtain a warranty deed of conveyance. The deed was introduced and bears date of August 22, 1913, but it was not filed for record until October 6, 1913, over a week after the last entry in the books of the bank upon which the purchaser and the guardian had drawn the checks that were involved in the transactions.

The alleged payment was in each case made by check, the purchaser at the guardian's sale having given his check for the $3,100, and the guardian having given his check for $2,600 for the alleged investment. The defendant testified that he deposited his check with the county judge on the day he made his bid, or about that time, and he professed ignorance of what later happened to it. He testified to having offered to deposit the money and having been told by the county judge that he had investigated his standing and that his check would be all right. The guardian's bank account appears in evidence and it shows that the $3,100 check was not credited to the account of the guardian until August 23, 1913, and there was shown charged against the guardian's account on the same day, August 23, 1913, a $2,600 check of the guardian in favor of the defendant. Prior to the deposit of the $3,100 check the guardian had no account in the bank as guardian. The $2,600 check was introduced in evidence and it bore the date of August 22, 1913, the day on which the order granting leave to make the investment was made and on which the guardian's deed

was filed for record at three o'clock in the afternoon. While the $2,600 check given to the defendant by the guardian was credited to the defendant's account August 23, 1913, the $3,100 was not charged against the defendant's account on the day it was credited to the account of the guardian. On that day, August 23, 1913, the account of the defendant showed a credit of only $69.55, and on the next secular day, August 25, 1913, after crediting the $2,600 check and deducting checks charged against the account, the balance was $2,607.85. On the morning of August 26, 1913, the account showed a credit of $2,606.85, which included this $2,600 credit, and on that day the $3,100 check was charged against his account. The president of the bank testified that the bank would at any time have honored the defendant's check for $3,100 regardless of the state of his account, and the defendant testified that he had arranged with the bank to honor the check.

(1) The plaintiff based his contention partly upon the case of Perkins v. Middleton, 66 Okla. 1, 166 P. 1104, in which it was held that even though a sale for cash was confirmed and an order was made permitting an investment of part of the funds alleged to have been received in payment of the purchase price, notwithstanding the fact that the sale proceedings were regular on their face and the court also passed upon the advisability of such an investment of proceeds, if the record was made under an agreement that the purchaser was not to pay the purchase price in full but that the real estate of the ward would be conveyed for the real estate purported to be purchased under the investment order, such proceedings, though regular on their face, constitute a constructive fraud upon the estate of the ward. In that case there were sales to two parties for cash, which were confirmed. The bidders then defaulted, and the defendants agreed with the guardian that they would take the allotments sold at the price bid, if the guardian would purchase a hotel property. The bids amounted to $3,050, and the hotel property was taken in at $2,200, the balance being paid partly to the guardian and partly on costs and fees. The defendants deeded the hotel property to the wards, and the guardian executed a deed to the bidders, who quitclaimed to the defendants. In the opinion, after quoting sections 6553 and 6554, Rev. Laws 1910, now sections 1466 and 1467, C. O. S. 1921, and then quoting sections 6555, 6556, and 6569, Rev. Laws 1910, same as sections 1468, 1469, and 1482, C. O. S. 1921, all of which were in effect at the time of the sale in the case we have under consideration, the court said:

"These last-quoted sections are relied upon by defendants as authorizing the transaction which took place in the instant case. We think, however, that they afford no authority for the exchange by the guardian, with or without the consent of the county court, of the property of the ward for other property, and that, construing all of our statutes governing the administration of estates of wards by guardians, no authority can be found for the sale of the ward's property for anything but money. Section 6567, first quoted above, seems to be mandatory, and requires all sales to be made for cash unless made upon terms or deferred payments. Our statutes relative to the investment of funds of the ward, whether arising from sales of the ward's property or otherwise, contemplate that the money to be invested shall be in the hands of the guardian at the time such investment is made. It seems to us that there is ample reason why this should be the law. If the property of the ward be exposed for sale for cash, it is open to the bid of any one desiring to bid. If it be offered for exchange of other property the field for bidders is necessarily reduced and limited by the condition of the property offered to be sold and by the condition of the property sought in exchange. So it is as to funds for investment. If the guardian has money of the ward in his hands for investment, the entire field of investment, as limited by the statutes, is open to him. If he seeks investment of his ward's funds by exchange of one property for another, the field, as we have said, is circumscribed and limited. We think then that the transaction which occurred in the instant case was clearly without any authority of law, and that it was an attempt to do by indirection that which could not lawfully be done directly, and therefore amounted to a constructive fraud upon the court and upon the wards. Bridges v. Rea, 64 Okla. 115, 166 P. 416."

In that case there was no agreement, apparently, before the confirmation, as there was shown no connection between the bidders and their assignees prior to the confirmation of the sales.

The defendant attempts to distinguish Perkins v. Middleton, supra, on the ground that the purchasers failed to pay the purchase price and then the guardian made a new arrangement with strangers under which he accepted property in part payment. Clearly, these strangers merely took over the interests of the purchasers, and, as in this case, the agreement took the form of an agreement to pay the bids and an agreement that the guardian would invest part of the proceeds. The only distinguishing feature on the facts is that in that case there was not even a semblance of payment of more than the difference between the amount

allowed for the hotel property as an investment and the amount of the bids, while in the present case the transactions were closed by utilizing a check which had been drawn for the purchase price of the land and drawing against it, before the guardian had received credit for it, a check for the amount of the supposedly authorized investment.

The defendants distinguish the present case from Bridges v. Rea, cited in the opinion in Perkins v. Middleton, supra, by calling attention to the fact that in Bridges v. Rea the agreement was made before the sale proceedings were instituted and that in that case there was a deliberate fraudulent intent to overvalue the stock of drugs and fixtures. But while that case was cited in Perkins v. Middleton, supra, the latter decision was not based upon actual fraud, but was carefully based upon constructive fraud, a purchaser making an agreement with a guardian for an investment of purchase price of the ward's realty in real estate of the purchaser, where the agreement was made prior to payment of the purchase price for the ward's land.

(2) The defendant cites Martin v. Replogle, 112 Okla. 27, 239 P. 465, claiming that it was somewhat similar to the present case. In that case the first syllabus paragraph reads as follows:

"1. Guardian and Ward—Sale of Land for Cash and Loan to Purchaser—Presumption of Validity.

"Where the record of the guardian's sale of real estate shows that the sale was made for cash, confirmed for cash, and the deed executed for cash, and thereupon the court made an order, upon application of the guardian, authorizing a loan of the cash or a part of it to the purchaser, as by section 1482, C. O. S. 1921, provided, which loan is made and evidenced by note and mortgage, the presumption is that both transactions are free from fraud and valid, and to overcome this presumption by parol evidence, the same must be clear, cogent, and convincing."

In that case the only evidence of fraud appealing to the Commissioners was the statement of the guardian, made twelve years after the transaction, in which he said that he "thought" $200 of the $600 purchase price was paid in cash and that the balance of $400 was paid by a note secured by mortgage which was later paid, which was very weak evidence standing by itself, and the court commented on the fact that in that he was unsupported by the county judge or any other person who was in a position to know the facts.

So far as it might be argued from that syllabus paragraph that it is any part of the duty of the county court upon confirmation, or later except upon motion of the guardian showing a refusal or neglect of the purchaser to comply with the terms of his bid after confirmation, to ascertain that the purchase price is paid, the argument must fail. The statutes are clear and what the court confirms is nothing but an agreement for sale. Payment may be made in the presence of the court, but there is no requirement that it be so made, and as a matter of practice it is not usually made in that manner, but upon confirmation the further closing of the transaction takes place between the parties. Further, an application for leave to invest funds proceeds upon the assumption that the recital of the guardian that he has the funds is true or he would not be applying for the leave. What the court investigates, and what its attention is directed to, is the question of whether the investment of a certain amount of money in the proposed investment is wise. If we give the word "thereupon" in the syllabus paragraph its natural meaning of promptly, closely or "immediately, at once, without delay" (Dewey v. Linscott, 20 Kan. 684-687), the paragraph seems a correct statement of the law, because the circumstances would well arouse the suspicion of a court and cause it not only to make it certain that the bid was paid in cash and that the cash was under the sole, absolute dominion of the guardian, but also to further investigate as to whether the agreement was made prior to the completion of the sale, to endeavor to avoid an exchange or the consequent possibility of a wrongful conducting of the sale that would justify setting aside its order of confirmation. However, although Martin v. Replogle may have been correctly decided, it is manifest from an examination of the statement of facts that the syllabus had no proper application to the facts there involved. The sale was confirmed April 2nd, and the application for leave to invest was not made, nor was the application filed, until June 19th, which was 78 days later. We could not indulge in a presumption that where an order for leave to invest funds is made 78 days after the confirmation of a sale there would be anything that would necessarily indicate to the court that the proposed borrower was a person who had formerly purchased the property from the estate nor that before making the order the court would ascertain such fact. The Commissioner laid special stress upon the fact that the order was applied for and made on the very day on which the guardian's deed was executed, manifestly being under the impression that it was a duty of the court to ascertain that

payment was made prior to the delivery of the deed. That seems to be the explanation of his use of the word "thereupon." Section 1284, C. O. S. 1921, which was in force at the time of the sale in Martin v. Replogle and at the time of the sale here under consideration, relates to confirmation, and while it recites that upon confirmation the sale shall be complete and requires that the execution of the deed be ordered, it is manifest that it is only an agreement that is confirmed and that the order for execution of a deed is impliedly conditional upon payment, for the section then proceeds in the following language:

"If after the confirmation the purchaser neglects or refuses to comply with the terms of sale, the court may, on motion of the executor or administrator, and after notice to the purchaser, order a resale to be made of the property."

We are not called upon to say whether the syllabus is otherwise correct, but so far as it seems to indicate that confirmation implies a finding by the court that purchase price has been paid, it is disapproved, and so far as it implies that upon hearing an application for leave to invest funds by purchase from the purchaser at the sale, made at a time not practically contemporaneous with the confirmation of the sale, there is any presumption that the court investigated to ascertain whether or not the guardian had on hand the money which he admitted to be in his possession, or can be considered to have been aware that the investment is to be made with the same person who formerly purchased property of the estate, it is also disapproved.

The case is not in point for a further reason: In the present case it is undisputed that when the application and order were made the guardian had nothing but the purchaser's check. Payment had not been made and the credit given to the guardian the following day, if we could concede it to be payment, would be a later payment, and it would only be payment of the difference between the two prices, that for the ward's land and that for the purchaser's land.

Further, in the case of Martin v. Replogle it was intimated in the opinion that had it appeared that the purchase price was not paid in full but only the excess over the proposed loan was paid in money, the court would have followed Perkins v. Middleton, supra, and the other cases cited in the opinion, and that bears strongly in favor of the plaintiff's contention and against that of the defendant.

The plaintiff in his brief referred to the case of Noel v. Edwards, 127 Okla. 163, 260 P. 58, distinguishing that case by admitting that it was there found by the jury, under a proper instruction, that the purchase price was paid prior to an agreement under which the guardian leased the land from the purchaser and applied some of the purchase money on the lease. While the jury found such payment to have been made before the agreement, it is noticeable that the court tried the case on the theory that such a condiion was necessary to the validity of the sale, and this court upon appeal used the following language:

"The evidence discloses that the purchase price was paid to the guardian; that the guardian placed it on deposit in the said bank. If the guardian subsequently appropriated part of the money to his own use, which the said instruction presupposes, and this was not in accordance with an understanding had prior to the sale. this appropriation by the guardian would not make a sale, otherwise valid, invalid."

All authorities cited have held where payment was not made in full the sale was fraudulent. And all the cases holding the investment good have confessedly and expressly turned upon the question whether payment had been made prior to the order for investment.

Yet the defendant would have this court make an exception in his case, although he did not pay the purchase price in money. Payment was his duty. Payment in money was his duty. He saw fit to elect to attempt to pay by check. True, he may have been misled by what the county judge is alleged to have said, but the fact remains that he did not pay in money. If we should attempt to consider the later honoring of the check as equivalent to payment of the purchase price, we would be ignoring the fact that prior to that time the guardian had drawn a check against it in the sum of $2,600, reducing its net amount to $500, really substituting a conveyance of property for the payment of the $2,600. At no time was the entire $3,100 under the control of the guardian. To say that it might have been had the check been presented between the 16th and the 22nd is to permit the purchaser to shift his duty over upon the shoulders of the guardian.

Abraham v. Homer, 102 Okla. 12, 226 P. 45, cited by the defendant, only holds that a guardian's sale may be made for investment in real estate. It does not hold that an exchange is authorized.

Further, if we felt authorized to make an exception in the face of the lack of authority to sell for anything but money, all

108

cash or part cash and part deferred payments, and the clear result of the transaction as being an exchange in part, we would in effect validate practically all fraudulent sales where the purchaser might give the guardian a check with the understanding that it would not be presented until after an order to invest had been made and the guardian had made out his check for the supposed investment.

We do not impugn the motives of the defendant in this case, but we cannot but observe that aside from his testimony and that of the banker, the case has every earmark of a deliberate attempt to evade the law, as well as having been an actual evasion of the law. If the defendant were here excused from the effect of neglect to pay in money, the law would permit such cases to turn solely upon the testimony of the parties involved, and upon an exchange of checks under the circumstances shown in this case proof of fraud would be rendered not only difficult but practically impossible, and the requirement that bids be paid in money and the lack of statutory authority to exchange real estate rendered of no account.

The defendant contends that the judgment of a trial court, if there was any competent evidence reasonably tending to support it, will not be reversed upon appeal. That is an elementary proposition, but it assumes that the question of fraud was properly submitted to a jury, an assumption not permitted.

(3) The measure of damages in this case is the value of the real estate of the ward at the time of the exchange, less the amount, if any, remaining on hand as part of the estate of the ward at majority, of the $500 paid to the guardian and of the net revenue from the land conveyed to the minor. It appears from the evidence that something like $1,500 in taxes had accrued against the property conveyed to the minor. They are not properly chargeable against damages due the plaintiff.

The judgment of the trial court is reversed, with instructions to grant the plaintiff a new trial and to further proceed in accordance with this opinion.

LESTER, C. J., and RILEY, CULLISON, and McNEILL, JJ., concur. CLARK, V. C. J., and ANDREWS and HEFNER, JJ., not participating. KORNEGAY, J., dissents.