534

EMERY et al. v. GOFF.

No. 30509. March 25, 1947.

Rehearing Denied May 6, 1947.

*180 P. 2d 175.*

A. L. Emery, of Okmulgee, in pro. per. and for plaintiff in error Frances B. Emery.

James M. Hays and Richard A. Hays, both of Okmulgee, for defendant in error.

PER CURIAM. This action was instituted in the district court of Okmulgee county by Ellis Clifford Goff against A. L. Emery and Frances B. Emery to recover a quarter section of land and to quiet title, and for rents and profits. On trial to the court judgment was rendered for plaintiff on both causes, and defendants appeal.

The land in question originally belonged to Misey Goff, mother of the plaintiff, who occupied the same as a homestead with her husband, Wesley Goff, and the plaintiff.

Misey Goff executed and delivered a deed to the land to one who subsequently conveyed to others. She then instituted an action to cancel the conveyance for violation of an alleged trust. While the action was pending, Misey Goff died, leaving her husband and the plaintiff as her only heirs. Administrator of the mother's estate was duly appointed, but nothing was done to revive the action.

Subsequently, a guardian was appointed for plaintiff herein, who was then a minor. The guardian, pursuant to the direction of the county court, and by its written approval, entered into a contract with the defendant A. L. Emery, a practicing attorney, whereby the guardian employed Emery to enter the aforesaid action and to prosecute by cross-petition the claim of the ward to said land as the sole and only heir at law of Misey Goff. The pertinent portion of said contract, after identifying the action then pending, reads as follows:

"The second party is an attorney at law duly licensed to practice in the State of Oklahoma. The first party employs second party, as such attorney at law, to represent first party in the prosecution of said action. If second party is successful in cancelling the said deeds and otherwise clearing the title to the said land in said first party, or Ellis Clifford Goff, the first party agrees to execute and deliver to second party a good and sufficient warranty deed for an undivided one-half interest in all, or any part of said land, recovered in said action or actions which might be necessary to institute. Or, if for the best

interest of both parties, the county judge may set aside half of said land for second party and the said first party agrees to execute and deliver to second party a good and sufficient deed for said half of said land so set aside by said county judge; the said county judge to be the judge of what is for the best interests of the parties. First party agrees to deposit from time to time such sums for costs as required by the court clerk and to pay also the necessary expenses in the prosecution of said action, or actions."

The contract was approved by the county judge in due form.

Emery performed his part of the contract, and recovered the land for Ellis Clifford Goff, subject, however, to the contract 'between his guardian and Emery.

Prior to said contract the administration proceedings in the matter of the mother's estate were concluded and the plaintiff herein determined to be the only heir of Misey Goff, deceased.

Thereafter, Emery filed his motion or petition in county court seeking an order directing the guardian to execute a guardian's deed to him in accordance with the above contract. The order was entered as prayed, and the guardian, pursuant to the order, executed and delivered to Emery a deed conveying to him an undivided one-half interest in the land. It may be conceded that this deed was ineffective.

Thereafter, plaintiff's father, Wesley Goff, commenced an action in district court against the plaintiff and Emery to recover an undivided one-half interest in the land as the husband of Misey Goff. Wesley Goff was unsuccessful in that action (Goff v. Goff, 124 Okla. 63, 253 P. 1014). Among other questions decided therein, is was determined that the homestead character of the land in question was determined by the county court's decree of distribution.

In December, 1931, approximately ten years subsequent to the execution of the guardian's deed, Emery commenced an action in district court against the present plaintiff, then still a minor, to partition the land pursuant to 12 O. S. 1941 §§ 1501-1516. Emery alleged that he and the minor Goff were tenants in common, each owning an undivided one-half interest in the land. He based his own title on the contract and guardian's deed aforesaid. He also sought judgment against Goff, plaintiff herein, for $924.92, representing taxes paid by Emery on behalf of the minor during the intervening ten years of cotenancy, and other expenses laid out in Goff's behalf. The sum so claimed had previously been allowed by the county court as representing just claims against young Goff's estate, and the claims bore the written approval of said court. No attorney's fees were included in said claim.

In the partition suit the plaintiff herein was represented by a duly appointed guardian ad litem. In the answer the validity of the guardian's deed was attacked on the ground that the same was "void and of no effect, for the reason that the same was made and obtained from the guardian under a void order of the county court of Okmulgee county, Oklahoma, and that said court was without power or jurisdiction to make such order." It was also charged that the land was the homestead of the minor and not subject to partition. The validity of the aforesaid claims of Emery was also attacked.

After a trial of the issues as authorized by sections 1504, 1505, supra, the court held the deed valid and rendered judgment for Emery for the $924.92 aforesaid, and decreed each party to be the owner of an undivided one-half interest in the land, and ordered partition (sec. 1505). The commissioners appointed by the court (sec. 1506) found that the land was not suitable to partition in kind and appraised the same at $1,600.

Emery elected to purchase the land at the appraised value (sec. 1512, supra) and asked that the price thereof be

credited on the money judgment mentioned above. The court so ordered; and in due course sheriff's deed was executed and delivered to Emery, who, by order of the court, was placed in possession of all the land. No appeal was taken.

The petition, with its amendments, in the instant case charges that the attorney's contract aforesaid and the guardian's deed were executed without authority of law, and beyond the jurisdiction of the county court, and void; that the judgment rendered in the partition proceedings sustaining said contract and deed was void and beyond the power and jurisdiction of the district court, and was a fraud against the rights of the plaintiff.

It is further charged that no part of the claim of defendant Emery for $924.92, for which he sought judgment in the partition action, was a proper charge against plaintiff's estate, and that the approval thereof by the county court was procured by fraud, and was void as to plaintiff. It is alleged that as a result the judgment of the district court based on said claim was void.

Defendants met the issue and pleaded the judgment in partition and the orders of the county court as res judicata of all issues.

Plaintiff commenced the present action within the year after reaching his majority and asserts that the same is a direct attack upon the judgment and orders aforesaid, and was instituted pursuant to his right to show cause against the same within one year after majority, as provided by 12 O. S. 1941 §§ 700, 1031 (8). It is insisted that the judgment and orders are void on the face of the record, and were fraudulent, and that the present action is therefore a direct attack thereon.

The present action constitutes a collateral proceeding against the district court judgment. But, so far as it attacks the judgment as void on the face of the record or void for fraud, it is a direct attack thereon in equity.

A judgment void on its face may be set aside any time, and a judgment void for fraud (sec. 1031 (4)) must be attacked within two years from its rendition, or, if defendant is an infant, he may attack a judgment for errors therein within 12 months after arriving at full age (sec. 1031 (8)).

Plaintiff says the petition filed by Emery in the partition proceedings failed to state a cause of action in that the contingent fee contract and the guardian's deed therein pleaded were void on their face and insufficient to support a cause of action, and that the judgment sustaining Emery's claim to the undivided one-half interest was therefore void on its face.

Certain of our decisions are cited in support of the contention that the guardian of an infant has no power to make an executory contract for the sale of the infant's real estate. That is the rule. Smith v. Rockett, 79 Okla. 244, 192 P. 691, and cases there cited. And certain of our decisions are cited in support of the contention that a ward's real property may be sold only in the manner and for the causes prescribed by statute. Cochran v. Davis, 154 Okla. 103, 6 P. 2d 685, and cases there cited.

An examination of the cited cases shows that the sales involved therein were the ordinary probate sales of real estate belonging to wards, and had no reference to contingent fee contracts of attorneys impressing the real estate with a claim in compensation for services rendered in litigation involving the ward's title to such real estate. Plaintiff cites no decision of this court holding that such a contract is invalid. In fact, this court has recognized a contract of this character as binding upon the ward's estate. First National Bank & Trust Co. of Tulsa v. Bassett, 183 Okla. 592, 83 P. 2d 837, 118 A.L.R. 1276. In speaking of a contract of the same nature as the one here considered, the court said:

"The contract here was expressly for the ward's benefit, to recover certain valuable land, and was approved by the county court. There can be no question but that contracts made for the benefit of the ward's estate and approved by the proper court are enforceable. The guardian's argument is that Nelson could not have created a future liability upon the ward's estate, and that this contract of employment created no legal liability, but bound Nelson, as guardian, personally."

The rule is there stated as follows:

"Where the guardian of an Indian minor makes a contingent contract with an attorney to handle litigation for the recovery of valuable lands for ward's estate, the contract being approved by the county court and such services are necessary and beneficial, the contract is valid and binding upon the ward's estate."

In that case the contract provided that the attorney should receive 50 per cent of any land or money recovered. The court held the contract valid in its entirety. The rule, therefore, applies in the instant case.

The contract itself here fixed the interest of the attorney in the land when the land was recovered. Such contracts are authorized in general. 5 O. S. 1941 § 7. The contract constitutes an equitable conditional assignment to the attorney of the subject of the litigation, to take effect on successful completion of the litigation. In the instant case the minor had only a chose in action or right of action for the recovery of the allotment of his mother which had been conveyed away.

In Lashley v. Moore et al., 112 Okla. 198, 240 P. 704, we held as follows:

"An attorney agreed to conduct litigation for quieting title to his client's real estate, and the client agreed as compensation 'to make, execute, and deliver to said second party (attorney) a good and sufficient warranty deed conveying an undivided one-half interest in and to said lands above described.' Held, that the agreement constituted an equitable, conditional assignment to the attorney of an interest in the subject of litigation.

"Such contract was not illegal or against public policy."

The contract involved was between the guardian of a restricted Indian and an attorney to cancel deeds and other conveyances to ward's lands, and was approved by the county court.

Fry v. Wolfe, 106 Okla. 289, 234 P. 191, involved a contract between the guardian of an Indian minor and an attorney-at-law for the recovery of the allotment of a deceased Indian "and whereby the defendant in error (the attorney) was to receive a fee of one-half of said land in the event the action was successful." In this case third parties bought the land pending the litigation, and the attorney brought suit against them on the contract. He recovered judgment for one-half undivided interest in the land. Affirmed by this court.

Berryhill v. Spillers, 105 Okla. 255, 232 P. 376, involved an approved attorney's contract between the guardian of full-blood Creek minors and Spillers. It was agreed that the attorney would receive 25 per cent of the value of property recovered or one-fourth of the real estate recovered. Suit was brought and a recovery had for 25 per cent of the value of the property recovered. This court affirmed.

In the opinion it is said:

"The contract was presented by the guardian upon his petition to the county court of Creek county for approval. The court, after a hearing, entered its order duly authorizing the guardian to enter into the contract, and approved the contract for the contingent fee of 25 per cent. The approval of the contract by the court settled the validity of the contract as between the parties as to the question of the reasonableness of the compensation as fixed for the attorney for his services to be performed for the minors. Evans v. Harris, 60 Okla. 27, 158 P. 898; McFarland v. Barker, 80 Okla. 274, 196 P. 131; Cotner v. Lon Jacobs Grocery Co., 84 Okla. 1,

202 P. 998; Myers' Estate v. Myers, 93 Okla. 143, 219 P. 943."

Kelly, Guardian, v. Kelly, 134 Okla. 172, 272 P. 838, involved an attorney's fee contract for recovery of minor's interest in dead Creek Indian allotment. The attorney waived all interest in the land except an interest in the oil and gas rights therein. The contract was upheld, and the attorney's claim for an interest in the oil and gas rights was sustained.

In the opinion we said:

"We can well see that in a case such as here, where there was a destitute infant on one side, making a claim to be the heir of his putative father, and the father and mother of the putative father, sustained by the forces of the Interior Department, contending the child to be illegitimate, and not entitled to any of the property of the minor, that obligations might be incurred in the conduct of the litigation on the faith of the courts carrying out the contract as made. That the failure of the courts to direct on the petition of the guardian that the contract be so carried out would work the gravest injustice. In the instant case, the litigation was long drawn out; the district court held against the infant in the parent suit, forcing an appeal to this court, where it won. The attorney at every stage of the proceeding ably and effectively represented his infant client, and complied with his said contract."

In Cabin Valley Mining Co. v. Hall, 53 Okla. 760, 155 P. 570, we held that an oil and gas mining lease made by a guardian for a term extending beyond the minority of the ward was valid, and said:

"The jurisdiction granted to the county court being 'to transact all business appertaining to the estates of minors,' and in cases where a guardian has been appointed 'the court making the appointment has exclusive jurisdiction to control him in the management and disposition of the person and property of his ward,' this grant would be broad enough to authorize any act to be done or step to be taken that under the circumstances of the case, in the judgment of the court, would be for the best interests of the minor, including authority to authorize the making of a lease for oil and gas mining purposes by the guardian for the lands of his ward for a term extending beyond the minority of the ward. If it were not so, conditions might, and probably would, arise where the interests of the ward would be greatly jeopardized, and the value of his estate caused to suffer serious depreciation and loss for lack of that authority."

58 O. S. 1941 § 885, which provides a maximum rate of attorney's fees payable "out of any estate of a minor or an incompetent" except for fees in litigation, specifically exempts from its operation "contingent fees or contract for recovery of property agreed upon and approved by courts. . . ."

Thus it will be seen that in this jurisdiction, in circumstances such as prevail here, by statute and decision an exception is recognized to the common-law rule that a guardian is without power to bind the ward or his estate by contract.

In Appeal of Price, 116 Pa. 410, 9 Atl. 856, it was said:

"It is not only the right but the plain duty of guardians to seek for and recover the property of their wards when held adversely, and to employ counsel for that purpose when necessary. And in our opinion it cannot be questioned that the estate of the ward is liable to make compensation for such service. It is equally clear that the guardian should not be held to a mere personal individual liability in such circumstances, and that the counsel should not be limited to the personal liability of the guardian in recovering their just compensation. That liability may be of no value whatever; but even if it were it cannot be considered as in any manner legally or equitably pledged for the service in question. It follows that if the claim in question is a proper one it is payable out of the ward's estate."

See Fillmore v. Wells, 10 Colo. 228, 3 Am. St. Rep. 567.

Since the attorney's contract was valid and fixed the interest of the at-

torney in the land when the land was recovered and constituted an equitable conditional assignment to the attorney of such interest, we hold that Emery could maintain the suit for partition and that the decree of partition was valid insofar as it determined that Emery and Goff were each the owner of an undivided interest in the land.

There is no merit to plaintiff's contention that the district court was without jurisdiction to partition the land in which the minor had an interest. 58 O. S. 1941 § 807; Bilby v. Noble, 106 Okla. 302, 234 P. 198.

The proceedings subsequent to the partition decree were irregular and Emery's deed growing out of the partition suit was void. The court was without power to order the execution of the sheriff's deed to Emery under his election to purchase without requiring the consideration therefor to be paid in cash. The election to purchase could not be legally accomplished by applying the amount of the $924.92 judgment toward the payment of the purchase price.

The judgment of the trial court is reversed and remanded with directions to render such judgment as will establish plaintiff's and Emery's title to a half interest each in the property involved and to determine the validity of Emery's claim against plaintiff and to determine the other equities and damages between the parties, including the amounts the respective parties may be entitled to for improvements or rents.

HURST, C.J., DAVISON, V.C.J., and OSBORN, BAYLESS, GIBSON and ARNOLD, JJ., concur. RILEY and WELCH, JJ., dissent.

———

RILEY, J. (dissenting). As long ago as Berryhill v. Spillers (1924) 105 Okla. 255, 232 P. 376, relied upon by the majority, involving an attorney's contingent contract with a minor's guardian for the recovery of chattels and land, claimed as assets of the minor's estate, providing, as consideration for the attorney's recovery, a part of whatever might be recovered, and specifying a conveyance of a share of both real and personal property to be recovered, this court determined that while the promise to pay the attorney from cash assets of the minor's estate was valid and enforceable, the attorney "could not enforce the specific performance of the contract for the conveyance of an undivided one-fourth interest in the property recovered." That, *the court* admitted to be the law.

Until the present opinion and decision, there never was departure from the rule stated. Since Berryhill v. Spillers, supra, is not now overruled, but followed, this phase of jurisprudence in Oklahoma is not the science of prediction.

Fry v. Wolfe, 106 Okla. 289, 234 P. 191, lends no support to the rule promulgated, for therein the attorney's contingent and contracted fee was not enforced against the estate of the minor, but as against subsequent purchasers of the minor's land. The attorney's recovery, there against adults, was based upon an ascertained fact of adoption of the contract "irrespective of whether the contract was void in its inception."

Lasley v. Moore, 112 Okla. 198, 240 P. 704, stands in the same relation. That cause does not involve a minor's estate but merely alienation of land belonging to an adult full-blood Creek Indian. For the alienation, Federal restrictions required approval of the grant by the county court, an adopted Federal agency, and since that approval was had, the contract constituted a lien upon the adult's land the same as if the restriction had not existed.

First Nat. Bank & Trust Co. of Tulsa v. Bassett, 183 Okla. 592, 83 P. 2d 837, 118 A.L.R. 1276, furnishes no majority support, for while the attorney's contingent contract there involved specified, as a consideration for recovery of assets belonging to the estate of a minor, a portion of either land *or* money, the claim allowed and sustained by judgment was *for money* in the sum of

$2,500. It is, therefore, misleading in the case at bar, alone involving land, to say "The rule therefore applies in the instant case."

The Bassett decision allows payment of an attorney's fee from the minor's funds alone, rather than from the guardian. The recovery was based on the court's approval of a contract so providing, which, without the county court's approval, would not have been a charge against the minor's estate either as a contracted claim or upon quantum meruit, for such attorney's claims are not *necessaries* as constituting debts or liens against the minor for which his land may be sold. Watts v. Houston, 65 Okla. 151, 165 P. 128; Marx v. Hefner, 46 Okla. 453, 149 P. 207, Ann. Cas. 1917B, 656.

While such an approved contract, in the alternative, or as in the Berryhill Case, subject as to value to construction in the alternative, and where the contract is for benefit of the ward, the alternative provision for the attorney's payment *in cash* is valid and binding upon the ward's estate. The rule in the Bassett Case, supra, is utterly without application to the instant case wherein no alternative is stated in the contract and no compensation to the attorney is either sought or secured except as affecting an alienation of the ward's title and interest in land constituting a homestead, to be alienated by the per curiam judgment in this unusual manner.

Nor may the equation presented be minimized by the statement that the minor had only a chose in action, or right of action, for the recovery of allotment of his mother, which had been conveyed away.

The land, as recited and as adjudged, Goff v. Goff, 124 Okla. 63, 253 P. 1014, constituted a homestead. This homestead existed for the shelter and protection of this minor. The mother's deed vested in others only the bare naked legal title, and that in trust, for the instrument was denominated "a safehand keeping deed." Possession of the land remained in the grantor and heir, this minor plaintiff. Subsequent traffic in the title was champertous and void. There is failure here to distinguish between possession and seisin, applicable to these lands, tenements, and rights of homestead by the statutes and Constitution provided. An estate may be vested or contingent. It is an estate if one has a present right or interest, and even though a future event is required to perfect legal title or reduce the estate to possession, the fact underlying the mother's grant was fear of fraud and aggression as against an underprivileged people, the object of a bounty provided by a just and generous government. This land constituted an allotment and homestead of a Creek freedman. Despite purpose of the deed of trust, Job-like, that which they feared most has come upon them. As in the opinion of this court by the Honorable John B. Harrison, "an innocent minor, like a bleeding lamb, was led to slaughter."

The fact remains, as by the majority recited, more than a decade and a half ago, while the plaintiff was yet a minor and of necessity a tenant in common and in possession of the land, by this court adjudged to be a homestead, the defendant below, A. L. Emery, commenced an action to partition the land. Emery based his action on the guardian's deed, conceded by the majority opinion to be "ineffective."

It is strange law under which this attorney succeeded by the intermediate judgment vacated and by which he is given right to prevail in any part otherwise than under the usual and exclusive method by statute provided, to alienate the minor's interest in land, or to divest the minor of the homestead derived from the blood of his ancestors.

Heretofore, as to a homestead, the rule prevailed, Miller v. Hassman, 24 Okla. 381, 103 P. 577, ". . . the same will not be partitioned"; Funk v. Baker, 21 Okla. 402, 96 P. 608, "The homestead, on the death of the widow, leaving un-

married minor children, is not subject to administration proceedings"; Pioneer Mortgage Co. v. Carter, 84 Okla. 85, 202 P. 513, "The children may continue their possession of the whole homestead until the youngest child becomes of age"; sec. 1223, O. S. 1931, 58 O. S. 1941 § 311; Rockwood v. St. John's Estate, 10 Okla. 476, 62 P. 277; In re Estate of Gardner, 122 Okla. 26, 250 P. 490; Choteau v. Choteau, 49 Okla. 105, 152 P. 373. But as against the judgment in partition, the minor may show cause. Nor is it necessary in the judgment to reserve the minor's right. 12 O. S. 1941 §§ 94, 96, 700, 1031.

Consideration may be given to a fancied rule of necessity. It may be by some believed that when the minor is divested of that with which he is invested, and the minor's estate be without cash assets with which to pay an attorney, of necessity, for recovery of a minor's lands, an attorney must be employed, therefore safeguards of statute and the rules of common law as to advertisement and sale of a minor's lands may be broken down. Such a view reverts to the issue put at rest adversely in the early case of Grissom v. Beidleman, 35 Okla. 343, 129 P. 853, 44 L.R.A. (N.S.) 411, Ann. Cas. 1914D, 599, followed in Watts v. Houston, supra. This court then adopted the New Hampshire and Massachusetts rule that "Whatever may be the law in other jurisdictions in regard to the liability of minors in actions at law for attorney's fees on account of services rendered to the estates of minors, the law is settled in this jurisdiction that claims for such services cannot be classified as necessaries and may be avoided by the minors," "even under an express promise." According to Coke, necessaries of the infant include victuals, medical aid, and good teaching whereby he may profit himself afterwards, and these concern the person and not the estate, and no authority goes beyond this. Coke, Lit. 172a. Therefore, a debt contracted and approved, whereby an attorney's fee is due and owing on the part of a minor, forms no basis for the sale or alienation of a minor's interest in lands or tenements.

The reason underlying the rule is that the minor's contract generally is subject to disaffirmance upon the minor's attainment of his majority, and while the infant is a minor, he has only capacity to contract as defined by the statutes. 15 O. S. 1941 § 12. The minor "cannot give a delegation of power nor, under the age of 18, make a contract relating to real property, or any interest therein, or relating to any personal property not in his immediate possession or control." How, then, may a contract, constituting a lien or alienation of an interest in land, be lawfully made or approved on behalf of a minor? The authorities and decisions answer in the negative.

And while a guardian's contract providing an attorney's fee may in fact be specified and approved, yet if the guardian's contract be considered that of the infant, the infant, upon attaining majority, may disavow the contract because it is the policy of the law to protect minors against their own mistakes. Wharen v. Funk, 152 P. Super. 133, 31 A. 2d 450, 43 C.J.S. 161; Grissom v. Beidleman, supra. The guardian's deed, based on the contract, directed and approved by the county court, is by the majority assumed to be void. The contract alone remains.

The endeavor of this and other courts has been to prevent designing adults from overreaching infants by taking advantage of their lack of experience and judgment and inducing them to enter into contracts clearly to their disadvantage. Worman Motor Co. v. Hill, 54 Ariz. 227, 94 P. 2d 865, 124 A.L.R. 1363. Witness in the case at bar the disadvantage to the minor in his loss of title and dispossession resultant, or to result, as applied to his homestead by the consideration provided in the attorney's contract, exclusively providing the attorney's part of the minor's land. A cash payment arising from rents and profits, or a sale in part of the land to pay debts, if such debts were allowable as a basis

of a sale, could have had no such result. The per curiam opinion is not in accord with decisions since statehood.

Considering the guardian's contract to be that of the minor, by force of statute, the minor had right of disaffirmance, 15 O. S. 1941 § 19; Webb v. Harris, 32 Okla. 491, 121 P. 1082. This court, in its early judgments, Grissom v. Beidleman, supra, adhered to the rule that an attorney for an infant employed by a guardian who recovered land of a minor might be paid, but the attorney had no interest or lien on the property recovered. Owens v. Gunther, 75 Ark. 37, 86 S. W. 851, 5 Ann. Cas. 130.

Chief Justice Williams made use of these words:

"The disaffirmance of a contract made by an infant nullifies it and renders it void *ab initio;* and the parties are returned to the same condition as if the contract had never been made."

Nor may the contract, after affirmance, be resuscitated or modified.

At common law, the estate of a minor could be alienated only for reasons limited. Generally, an infant may acquire property rights but save in the manner provided by law, as a minor he cannot dispose of them. 39 C.J.S. 189. The common law was derived from the experiences of Anglo-Saxon civilization. It gave to humanity the most enlightened system of jurisprudence the world has ever known. The common law provided a system for law by which rule, applied individually with reason, was transformed into the reign and majesty of law. Thus civilization was afforded a plan of distributive justice and justice administered became something apart from the oracle or decree. The motivating impulse of the common law was not forthwith to do right, but to know that justice might be done. Ours is a system of justice under law. That we may have a rule of law and not of men. Herein, there is variation and vacillation in the rule. The error is extended to partition and sale of the homestead

and it imports absolute validity of an attorney's contract providing as a single consideration a portion of minor's lands recovered.

Under the general rule, at common law the nature of an infant's property must not be changed either by a guardian or a court so as to convert personal property into real or real property into personal. It is the English rule that in the absence of express statutory authority there could be no conversion of a minor's property except for the purpose of paying debts or supporting and educating the minor. This is the law in American jurisprudence. Olsen v. Rasmussen, 146 Ore. 648, 30 P. 2d 329.

This doctrine of the common law, as modified, is the law in Oklahoma.

By statute, however, the guardian is permitted to sell the lands of his ward for additional specified purposes such as to reinvest in more productive stock.

Ordinarily, statutes in derogation of the common law are subject to the rule of strict construction, but by force of statute, 12 O. S. 1941 § 12, 25 O. S. 1941 § 29, in Oklahoma, generally, such is not the rule. An exception, however, is provided by the statute regarding probate and guardianship proceedings and that statute restricts alienation of a minor's land to "the manner prescribed by statute." 58 O. S. 1941 §§ 1-893. Thus sale for the purposes enumerated by statute constitutes the exclusive method of such alienation, and so a minor's land may not be exchanged or bartered whether for chattels, other lands, or services of an attorney. Rock Island Implement Co. v. Pearsey, 133 Okla. 1, 270 P. 846; Ammerman v. Karnowski, 109 Okla. 156, 224 P. 774, as the statute, 58 O. S. 1941 §§ 821, 822, constitutes a limitation on power. Perkins v. Middleton, 66 Okla. 1, 166 P. 1104.

Time then stands as an element at law, requisite to the effective and final grant made by or on behalf of the minor and as a condition precedent of alienation of the minor's lands under the de-

vice of an attorney's fee contract, even though it be approved by court.

Within the time provided by law, the minor disavowed the contract and showed cause against the judgment in partition. 12 O. S. 1941 § 1031, sub. 8, § 700.

The guardian's deed to Emery, based on the contract, conveying the minor's land, is conceded by the majority to be void, as well it may be. Gault Lumber Co. v. Pyles, 19 Okla. 445, 92 P. 175; Drennan v. Harris, 67 Okla. 313, 161 P. 781, 170 P. 500; Smith v. Rockett, 79 Okla. 244, 192 P. 691; William Cameron & Co. v. Yarby, 71 Okla. 79, 175 P. 206; Anno. 108 A.L.R. 936; Perkins v. Middleton, 66 Okla. 1, 166 P. 1104; Cochran v. Davis, 154 Okla. 103, 6 P. 2d 685.

Likewise, the lien adjudged against the minor's land was void. Jones v. Johnson, 72 Okla. 134, 178 P. 984, 21 A.L.R. 202; Morton v. Thomason, 146 Okla. 255, 293 P. 1005.

Since, then, the attorney's contention is relegated to the validity of the contract, whether such contracted provision for alienation of the minor's land be void, as in the Berryhill-Spillers Case, or whether the contract be subject to disavowal as once thought by this court, speaking through its first Chief Justice, Grissom v. Beidleman, supra, and irrespective of the validity of the action in partition of the minor's homestead, which, according to our decisions, likewise has invalidity, it is readily apparent that the judgment in partition is void on the face of the record, Schmid v. Farris, 169 Okla. 445, 37 P. 2d 596, and that the decree in equity last below rendered should receive affirmance.

This is so because unless authority is found in the statute, the power to alienate minor's land does not exist. The only species of alienation found in statute is by sale, so whether the attempted alienation by contract was made by the minor, or on behalf of the minor by the guardian, irrespective of approval by the probate court, it is void. Alienation of the minor's estate as a transaction must be by actual sale and not by the mere bartering or exchange of land for services, as in the case at bar.

It is fundamental that the donee of power can exercise it only to the extent actually conferred and as conferred. Trutch v. Bonnell, 11 Ore. 58, 4 P. 588, 50 Am. Rep. 456.

The word "sale," as held in Brown v. Laird, 134 Ore. 150, 291 P. 352, 73 A. L. R. 877, means "the transfer or passing of title in exchange for money, preferably paid in cash." Sale is a word of precise, legal import, both at law and in equity. It means at all times a contract between parties to give and pass rights of property for money. Williamson v. Berry, 8 How. 495, 12 L. Ed. 1170.

That the power of a guardian to sell land of his ward does not include the power to barter or exchange such lands is clear and overwhelming by authority and decisions established. Perkins v. Middleton, supra; Killmer Paint & Glass Co. v. Davenport-Bethell Co., 136 Okla. 252, 277 P. 653; 63 A.L.R. 1003; Olsen v. Rasmussen, supra.

It is also well settled that the powers of a probate court do not include authority to divest an infant of his title to lands except in the manner by the statute prescribed.

In the case at bar there was no money paid for the interest of the minor in the land, inherited from his mother. So that a fraud was perpetrated against the law and against the rights of the minor. That fraud was carried forward into the partition and so-called sale where again, for the minor's inherited and remaining interest in the land, no money was paid. Thus the minor was dispossessed of the homestead, denied due process of law, and its private property was taken without just compensation. That was a sham sale, Conklin v. LaDow, 33 Ore. 354, 54 P. 218, against which, under provisions of statute or in the absence of statute, equity exists to afford relief. Kelly, Gdn., v. Kelly, 134

Okla. 172, 272 P. 838; Allison v. Crummey, 64 Okla. 20, 168 P. 691.

The majority err in reliance and statement of contents in Kelly, Gdn., v. Kelly, supra, for, as appears from the syllabus, the attorney sought "funds" for his contracted fee, and in the body of the opinion the attorney "waived all interest in the real estate except *revenue arising therefrom.*" The exception did not extend, as stated by the majority, to *"an interest in the oil and gas rights therein."*

I would affirm.

Rehearing Denied May 6, 1947.